Gwendolyn C. Payton, ABA No. 9712101
LANE POWELL LLC
301 West Northern Lights Boulevard
Suite 301
Anchorage, AK 99503
Telephone:  206-223-7746
Facsimile:  206-223-7107
Email:  PaytonG@LanePowell.com
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOHN D. ZIPPERER, JR., M.D, <br><br>and<br><br>JOHN D. ZIPPERER, JR., M.D., LLC dba ZIPPERER MEDICAL GROUP,<br><br>Plaintiffs,<br><br>v.<br><br>PREMERA BLUE CROSS BLUE SHIELD OF ALASKA,<br><br>Defendant. | Case No.: 3:15-cv-00208-JWS <br><br> **NOTICE OF REMOVAL** |

Defendant Premera Blue Cross Blue Shield of Alaska ("Premera") respectfully removes this action to the United States District Court for the District of Alaska, and states as follows:

1.  Plaintiffs John D. Zipperer, Jr., M.D ("Zipperer") and John D. Zipperer, Jr., M.D., LLC dba Zipperer Medical Group ("ZMG") (collectively, "Plaintiffs") filed a "Complaint for Declaratory Judgment" against Premera in the Superior Court for the State of Alaska, Third Judicial District at Anchorage, Case No. 3AN-15-9864 CI (the "Complaint" or "Compl."). Pursuant to 28 U.S.C. § 1446(a), Premera has attached copies of all process, pleadings, or orders

(including the Complaint) purportedly served on it at Exhibit A to this Notice of Removal.

2. Premera was served with the Complaint and a summons on September 30, 2015. Premera files this removal notice within the 30-day period required in 28 U.S.C § 1446(b)(3).

3. Premera removes this case pursuant to 28 U.S.C. § 1442(a)(1), which permits removal where a person acting under the direction of a federal agency and its officers is sued for actions taken under color of federal office. In addition, Premera removes this case pursuant to 28 U.S.C. § 1441 as an action over which this Court has federal question jurisdiction under 28 U.S.C. § 1331 because two sets of Plaintiffs' claims are based on federal law for two different reasons.

## NATURE OF THE CASE

4. Zipperer is a doctor and ZMG is Zipperer's medical practice located in Alaska. Compl. ¶¶ 4, 5.

5. Premera provides health insurance products and services in Alaska, and is a licensee of the Blue Cross and Blue Shield Association ("BCBSA"). *Id.* ¶ 6.

6. The dispute in this case involves allegedly "unpaid claims for laboratory services" that ZMG allegedly provided "from December 2014 to the present" to "enrollees in various Premera health plans." *Id.* ¶ 7.

7. ZMG operates laboratories in Alaska and Tennessee. *Id.* ¶¶ 8, 9. Plaintiffs allege that ZMG obtained samples from its patients in Alaska and then sent those samples to ZMG's laboratory in Tennessee for processing, despite the fact that ZMG also has a laboratory in Alaska. *Id.* ¶¶ 8-11. Plaintiffs contend that these services "were medically necessary and otherwise covered services under Premera health plans." *Id.* ¶ 33.

8. A dispute arose between ZMG and Premera as to the manner in which ZMG should

complete claims forms for such laboratory services so as to accurately reflect that the laboratory services were performed in Tennessee, not Alaska. *E.g., id.* ¶¶ 22, 26; *see also id.*, Ex. 1. Plaintiffs contend that they should complete a particular box on the claim form to show Alaska as the place the services were performed, while Premera's position is that the box should reflect that the services were performed in Tennessee. *See, e.g., id.* ¶ 18. In addition, for laboratory services where the patients are federal employees, Premera informed Plaintiffs that the claims needed to be sent to Blue Cross Blue Shield of Tennessee (which is the BCBSA licensee located in Tennessee) because that is where the laboratory services were performed. *See id.*, Ex. 1. Plaintiffs had been sending – and continue to send – federal employee laboratory claims to Premera, even though the laboratory services were performed in Tennessee. Laboratory services are typically reimbursed at a higher rate if performed in Alaska than if performed in Tennessee, which presumably explains why Plaintiffs want to make it seem as if the services were performed in Alaska.

9. Plaintiffs allege that because of this dispute, "Premera placed ZMG on 100% pre-payment review of all laboratory claims submitted to Premera" by ZMG. *Id.* ¶¶ 21-22. Pre-payment review means that Premera would review relevant medical records before determining whether to pay the laboratory claims (it does not mean that the claims would not be paid). Plaintiffs also allege that "Premera has now requested additional information that has nothing to do with the . . . claim form or the location of the services." *Id.* ¶ 28; *see also id.* ¶ 29 ("Premera is now requesting all documentation to support the laboratory codes billed by ZMG").

10. Plaintiffs plead one count. *See id.* ¶¶ 30-41. That count alleges a violation of AS § 21.36.495, entitled "Prompt payment of health care insurance claims" (hereinafter, the "Alaska Prompt Pay Act"). Specifically, Plaintiffs contend that the Alaska Prompt Pay Act required

Premera to pay each of the laboratory claims at issue "within 30 [calendar] days of [Premera's] receipt of the claim." Compl. ¶ 36. Plaintiffs allege that Premera also violated the Alaska Prompt Pay Act by "fail[ing] to give notice to Plaintiffs of the basis for the denial or any specific information needed to adjudicate the claim within 30 calendar days after [Premera] received the claim." *Id.* ¶ 37. Plaintiffs assert that Premera's "placing ZMG on pre-payment review . . . was in fact a pretext to avoid application of the Alaska" Prompt Pay Act. *Id.* ¶ 39.

11. As remedies, Plaintiffs seek several forms of declaratory relief, including declarations that Plaintiffs had been properly completing claim forms for laboratory services, that Premera violated the Alaska Prompt Pay Act, that Premera process and pay with interest "the laboratory claims at issue in accordance with Alaska law," and that Premera remove ZMG from pre-payment review. *Id.* at pp. 8-9 (Prayer for Relief).

12. Plaintiffs do not allege that they (or either of them) has any current contractual relationship with Premera, and in fact they do not. ZMG previously had a provider contract with Premera (*i.e.*, ZMG had been a participating provider), but that relationship ended earlier in 2015. Declaration of Laura Hunter ¶ 4 (Ex. B hereto) ("Hunter Declaration"). Some of the claims at issue in this case arose before, and some after, ZMG's contractual relationship with Premera ended. *Id.* Accordingly, at least with respect to the claims that arose after ZMG's provider contracted had terminated, Premera owes no duties to Plaintiffs unless ZMG's patients assigned their rights to payment to one or both of Plaintiffs. Plaintiffs appear to be proceeding on such an assignment theory with respect to all of the claims in this case. For example, and as stated above, Plaintiffs allege that Premera violated the Alaska Prompt Pay Act by "fail[ing] to give notice *to Plaintiffs* of the basis for the denial or any specific information needed to adjudicate the claim within 30 calendar days after [Premera] received the claim." *Id.* ¶ 37

(emphasis added). But the Alaska Prompt Pay Act requires that notice regarding a denied claim be given "to the covered person" (*i.e.*, ZMG's patient who is covered under a Premera health plan). AS § 21.36.495(b). Under the state law, notice is required to be given "to the provider of medical services or supplies" only "if the claim was assigned or if the covered person elected direct payment" to the provider. *Id.*

13. As discussed in more detail below, some of the covered individuals at issue in this case are enrolled in a federal employees health plan governed by the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901-14, and some are enrolled in health plans governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq*.

## THE FEHBA-GOVERNED HEALTH PLAN

14. One of the claims at issue in this case involves laboratory services allegedly provided by ZMG to a patient whose initials are JK. Hunter Declaration ¶ 7. At the time the services were allegedly rendered by ZMG, JK was enrolled in the Service Benefit Plan, one of the federal government's health benefits plans for federal employees and their dependents. *Id.* Likewise, many additional patients at issue in this case were enrolled in the Service Benefit Plan when they were treated by ZMG. *Id.* ¶¶ 6-7. The Service Benefit Plan was created by a federal government contract between the United States Office of Personnel Management ("OPM") and BCBSA pursuant to FEHBA. *Id.* ¶ 6; *see generally* 2013 Service Benefit Plan Master Contract (Ex. A to Hunter Declaration) [hereinafter "2013 Master Contract"];[1] *see also* 2014 Statement of Benefits for the Service Benefit Plan at 5 (Ex. D to Hunter Declaration); 2015 Statement of Benefits for the Service Benefit Plan at 5 (Ex. E to Hunter Declaration); 5 U.S.C. § 8903(1).

---

[1] The 2013 Master Contract (along with annual amendments thereto) was the operative contract governing the Service Benefit Plan in 2014 and 2015. The 2014 and 2015 annual amendments are attached to the Hunter Declaration as Exhibits B and C, respectively.

15. In contracting to establish the Service Benefit Plan, BCBSA acts on behalf of local Blue Cross and Blue Shield licensees that administer the Plan in their respective localities; Premera is such company and administers the Plan in Alaska. *See* 2014 Statement of Benefits at 5; 2015 Statement of Benefits at 5; Hunter Declaration ¶ 6.

16. FEHBA and the regulations implementing it set forth a comprehensive framework for the supervision and administration of FEHBA plans, including the Service Benefit Plan.

    a. Under FEHBA, OPM is vested with sole authority to contract for the provision of health plans, to determine the benefit structure of each plan, and to promulgate the official description of a plan's terms in a "Statement of Benefits." *See* 5 U.S.C. §§ 8902(a), (d), 8907. The Statement of Benefits is incorporated into the government contract between OPM and BCBSA. *See* 2013 Master Contract § 2.2(a); *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 684 (2006).

    b. Congress delegated solely to OPM the authority to police the conduct and practices of FEHBA carriers, and the agency has promulgated extensive regulations on the topic. *See* 5 U.S.C. §§ 8902(e), 8910, 8913(a); 48 C.F.R. Ch. 16; *see also Bridges v. Blue Cross & Blue Shield Ass'n*, 935 F. Supp. 37, 42-43 (D.D.C. 1996); *Kight v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, 34 F. Supp. 2d 334, 342 (E.D. Va. 1999).

    c. FEHBA, OPM's regulations, and the Statement of Benefits establish that the exclusive remedy to challenge a carrier's refusal to pay benefits is an administrative appeal at OPM, followed by judicial review in federal court of OPM's decision. OPM prohibits lawsuits against a FEHBA carrier or its subcontractors relating to the provision of benefits under a FEHBA plan. *See* 5 U.S.C. §§ 8902(j), 8912; 5 C.F.R. §§ 890.105, 890.107; 2014 Statement of Benefits at 130-31; 2015 Statement of Benefits at 134-35.

d. The OPM-BCBSA contract contains provisions relating to the payment of benefits, including the time period in which benefit payments are to be made. *See, e.g.*, 2013 Master Contract § 1.9(f)(5). These provisions are more lenient than the Alaska Prompt Pay Act, including that: (1) the OPM-BCBSA contract requires most – but not all – claims to be adjudicated within a specified time period; (2) the contract calls for most claims to be adjudicated "within 30 working days," not calendar days; and (3) the contract does not call for interest (or any other monetary penalties) for late payments. *Id.*

e. The OPM-BCBSA contract expressly permits Premera (and the other Blue Cross and Blue Shield licensees that administer the Service Benefit Plan) to obtain whatever information is needed to establish that the services in question are in fact covered under the Service Benefit Plan and are properly billed. For example, the contract requires a claimant to "furnish satisfactory evidence that all services or supplies for which expenses are claimed are covered services or supplies within the meaning of the contract." 2013 Master Contract § 2.3(b). The contract also states that "the Carrier, to the extent reasonable and necessary and consistent with Federal law, shall be entitled to obtain from any person . . . all information and records relating to visits or examination of, or treatment rendered or supplies furnished to, a Member as the Carrier requires in the administration of such benefits." *Id.* § 2.3(e).

f. The OPM-BCBSA contract provides that "benefits provided under the contract are not assignable by the Member to any person without express written approval of the carrier, and in the absence of such approval, any such assignment shall be void." 2013 Master Contract § 4.1(h) (amending § 2.3). Here, Plaintiffs do not allege that the carrier gave express written approval for any assignments.

g. Under FEHBA, the federal government pays for the majority of the premium cost for each enrollee, with the enrollee paying the remainder. *See* 5 U.S.C. § 8906(b)(1), (b)(2), (f). All premiums are deposited initially into the Employees Health Benefits Fund within the U.S. Treasury. 5 U.S.C. § 8909(a). Carriers of experience-rated FEHBA plans – such as the Service Benefit Plan (*see, e.g.*, 2013 Master Contract § 3.3(a)) – do not receive the premiums as they are paid into the Employees Health Benefits Fund in the federal Treasury. Instead, the premiums for the Service Benefit Plan are placed into a special letter of credit account within the U.S. Treasury fund. 48 C.F.R. § 1632.170(b)(1); *see also id*. § 1652.232-71(d). The Blue Cross and Blue Shield licensees administering the Service Benefit Plan, such as Premera, then draw directly from the letter of credit account in the Treasury fund to pay for benefit claims and allowable administrative expenses. *Id.* §§ 1632.170(b), 1652.216-71(b). Any Service Benefit Plan premiums that are not used to pay benefits and administrative expenses remain the property of the government, and are not paid to the carrier. *See, e.g.*, 2013 Master Contract § 3.3; *see also Health Care Service Corp. v. Methodist Hospitals of Dallas*, Case No. 3:13-CV-4946-B, 2015 U.S. Dist. LEXIS 54357, at *38 (N.D. Tex. Jan. 28, 2015). An experience-rated carrier's profit, if any, comes from a separate, negotiated service charge. *See Nat'l Ass'n of Postal Supervisors v. United States*, 21 Cl. Ct. 310, 315 (1990) ("The service charge is the only profit element . . . [an experience-rated] carrier may not make a profit on the premium charges themselves."), *aff'd*, 944 F.2d 859 (Fed. Cir. 1991); *see also* 48 C.F.R. § 1615.404-4.

h. FEHBA contains a preemption provision that states: "The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law,

or any regulation issued thereunder, which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1) (2000) (as amended by the Federal Employees Health Care Protection Act of 1998, Pub. L. No. 105-266, § 3(c), 112 Stat. 2363, 2366 ). "[U]nder § 8902(m)(1) as it now reads, state law – whether consistent or inconsistent with federal plan provisions – is displaced on matters of 'coverage or benefits.'" *McVeigh*, 547 U.S. at 686. With this preemption provision, Congress sought to "strengthen the ability of national plans to offer uniform benefits and rates to enrollees regardless of where they may live." H.R. Rep. No. 105-374, at 9 (1997); *accord* S. Rep. No. 95-903, at 2 (1978) (legislative history of FEHBA's original preemption provision); *see also Empire*, 547 U.S. at 686.

## THE ERISA-GOVERNED HEALTH PLANS

17. One of the claims at issue in this case involves laboratory services allegedly provided by ZMG to a patient whose initials are DT. Hunter Declaration ¶ 13. At the time the services were allegedly rendered by ZMG, DT was enrolled in The Alaska Support Industry Alliance Health Plan's Alaska HeritagePlus Envoy plan, which is an insured health plan governed by ERISA. *Id*. Likewise, additional patients at issue in this case were enrolled in insured ERISA-governed health plans when they were treated by ZMG. *Id.*

## GROUNDS FOR REMOVAL

18. This case is removable for three independent reasons. First, this case is removable under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which authorizes removal of an action against "any officer (or person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). Second, this case is removable pursuant to 28 U.S.C. § 1441(a) because this Court has original jurisdiction over this matter because claims related to Service

Benefit Plan enrollees turn on federal common law, meaning there is federal question jurisdiction under 28 U.S.C. § 1331.  Third, this case is removable pursuant to 28 U.S.C. § 1441(a) – again on the basis of federal question jurisdiction – because claims relating to enrollees in ERISA-governed plans are completely preempted.

## Removal Under the Federal Officer Removal Statute

19. Courts specifically have held that suits against entities administering the Service Benefit Plan are removable by the plan's administrators under the federal officer removal statute. *See Jacks v. Meridian Res. Co.*, 701 F.3d 1224 (8th Cir. 2012) (Blue Cross Blue Shield entity administering FEHBA plan properly invoked section 1442(a)(1)); *Anesthesiology Assocs. of Tallahassee, Fla., P.A. v. Blue Cross & Blue Shield of Fla., Inc.*, No. 03-15664, slip op. at 3-5 (11th Cir. Mar. 18, 2005) (same) (Ex. C hereto); *Goncalves v. Rady Children's Hosp. San Diego*, 65 F. Supp. 3d 985, 989-91(S.D. Cal. 2014) (FEHBA reimbursement disputes are removable under federal officer removal statute, except in limited situation where case involves certain state probate court proceedings); *Bell v. Blue Cross & Blue Shield of Okla.*, No. 5:14-CV-05046, 2014 U.S. Dist. LEXIS 155723 (W.D. Ark. Nov. 3, 2014) (Blue Cross Blue Shield entity administering FEHBA plan properly invoked section 1442(a)(1)); *Ala. Dental Ass'n v. Blue Cross & Blue Shield of Ala., Inc.*, No. 2:05-cv-01230-MEF, 2007 U.S. Dist. LEXIS 685, at *21-25 (M.D. Ala. Jan. 3, 2007) (same); *see also Omega Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 592 F. App'x 268 (5th Cir. 2014) (removal by FEHBA plan administrator under section 1442(a)(1) was objectively reasonable).[2]

---

[2] *Accord Peterson v. Blue Cross/Blue Shield of Tex.*, 508 F.2d 55, 56-57 (5th Cir. 1975) (Blue Cross Blue Shield entities administering Medicare plan properly removed claim brought by provider, pursuant to section 1442(a)(1)); *Group Health, Inc. v. Blue Cross Ass'n*, 587 F. Supp. 887, 891 (S.D.N.Y. 1984) (same); *Thompson v. Cmty. Ins. Co.*, No. C-3-98-323, 1999 U.S. Dist. LEXIS 21725, at *6-28 (S.D. Ohio Mar. 3, 1999) (HMO administering Medicare plan properly removed case pursuant to section 1442(a)(1);
(footnote continued on next page)

20. The Ninth Circuit has "recognize[d] that defendants enjoy much broader removal rights under the federal officer removal statute than they do under the general removal statute, 28 U.S.C. § 1441." *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir.) (citation omitted), *cert. denied*, 135 S. Ct. 361 (2014). To invoke the federal officer removal statute, a removing party "must show that (1) it is a 'person' within the meaning of the statute, (2) a causal nexus exists between plaintiffs' claims and the actions [the removing party] took pursuant to a federal officer's direction, and (3) it has a 'colorable' federal defense to plaintiffs' claims." *Id.* at 1120.

21. The first factor in *Leite* is met here because corporations, such as government contractors, qualify as "persons" under the statute. *Id.* at 1122 n.4 (citations omitted).

22. The second factor is also met. As pertinent to 28 U.S.C. § 1442(a)(1), a removing party is deemed to be sued for actions under the direction of a federal agency and federal officers where, as is the case with Premera's administration of the Service Benefit Plan here, it is administering the terms of a federal government contract or federal program under the direct and detailed supervision of a federal agency. Government contractors may remove a case pursuant to the federal officer removal statute where "the acts for which they are being sued . . . occurred because of what they were asked to do by the Government," even if the acts were not "specifically contemplated by the government contract." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137, 138 (2d Cir. 2008). Here, Premera (and other Blue Cross and Blue Shield licensees) "help the government fulfill the basic task of establishing a health benefits program for federal employees. OPM has direct and extensive control over these benefit contracts under the

---

(footnote continued from previous page)
*Holton v. Blue Cross & Blue Shield of S.C.*, 56 F. Supp. 2d 1347, 1351-52 (M.D. Ala. 1999) (Blue Cross Blue Shield entity administering health benefits plan for dependents of military retirees properly removed case pursuant to section 1442(a)(1)).

FEHBA." *Jacks*, 701 F.3d at 1233. "[T]he benefit payment process [is] a process over which OPM exerts regulatory control." *Id*. In this case, Plaintiffs sue Premera expressly because of actions taken in the course of administering the Service Benefit Plan – specifically, in processing claims for benefits and requesting evidence that the claims at issue are proper. On this basis, Plaintiffs' Complaint is causally connected to Premera's actions under the direction of a federal agency and its officers. *See id.* at 1230 n.3 (finding the requisite causal connection). "In assessing whether a causal nexus exists, [the court] credit[s] the defendant[s'] theory of the case." *Leite*, 749 F.3d at 1124.

23. The third factor in *Leite* is met because there are colorable federal defenses to Plaintiffs' claims against Premera. To remove the case, Premera does not "have to prove that [its federal] defense is in fact meritorious." *Id*. Premera need only show that it has a federal defense that is "colorable." *Id*. Here, Premera has three separate colorable federal defenses.

      a.      First, Plaintiffs' claims under the Alaska Prompt Pay Act are preempted by FEHBA's express preemption provision, 5 U.S.C. § 8902(m)(1), which provides that the terms of FEHBA contracts concerning benefits and benefits payments shall supersede state law. *See Botsford v. Blue Cross & Blue Shield of Mont., Inc.*, 314 F.3d 390 (9th Cir. 2002); *Hayes v. Prudential Ins. Co.*, 819 F.2d 921 (9th Cir. 1987). Here, the preemptive terms of the FEHBA contract include: (1) provisions that set forth an exclusive process for challenging benefit denials and that expressly forbid the claims Plaintiffs have brought against Premera; (2) provisions that set forth the time in which Premera should adjudicate claims; and (3) provisions allowing Premera to obtain records it believes are necessary to establish that the services at issue are properly billed under the Service Benefit Plan. *See supra*, ¶ 16.c., d., & e. Courts have found other states' similar prompt pay laws to be preempted by FEHBA. *See Burkey v. Gov't*

*Emps. Hosp. Ass'n*, 983 F.2d 656 (5th Cir. 1993); *Methodist Hosps.*, 2015 U.S. Dist. LEXIS 54357, at *37-45; *see also Am.'s Health Ins. Plans v. Hudgens*, 742 F.3d 1319 (11th Cir. 2014) (state prompt pay law preempted by ERISA, FEHBA's close cousin).

  b. Second, there is a colorable defense of sovereign immunity because, among other reasons, the funds that would be used to pay Plaintiffs for their services – and for any interest on that amount – would come directly from the federal Treasury. *See Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, No. 11-806, 2014 U.S. Dist. LEXIS 139442, at *19-23 (E.D. La. Sept. 30, 2014) (dismissing medical provider's state law claims against Service Benefit Plan administrator on sovereign immunity grounds); *Mentis El Paso, LLP v. Health Care Serv. Corp.*, 58 F. Supp. 3d 745, 751-57 (W.D. Tex. 2014) (same); *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, No. 3:12-cv-1607-O, 2014 U.S. Dist. LEXIS 12750 (N.D. Tex. Feb. 3, 2014) (same); *Calingo v. Meridian Res. Co.*, No. 7:11-cv-628, 2011 U.S. Dist. LEXIS 83496 (S.D.N.Y. July 29, 2011) (holding sovereign immunity barred claims for monetary damages against FEHBA administrator); *see also Omega Hosp.*, 592 F. App'x at 272 (citing *Innova*); *see generally Anderson v. Occidental Life Ins. Co.*, 727 F.2d 855, 856-57 (9th Cir. 1984); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).

  c. Third, Plaintiffs' state-law claims are displaced by federal common law, which governs the federal contract at the heart of the claims involving Service Benefit Plan enrollees. Plaintiffs' Alaska Prompt Pay Act allegations are "displaced by federal common law" (*Jacks*, 701 F.3d at 1235), since federal common law overtakes an area where (1) the subject is infused with uniquely federal interests, and (2) the application of state law conflicts with federal policy or requirements. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 507 (1988). In *Empire*,

both the Supreme Court and the Second Circuit held that the "uniquely federal interest prong" is satisfied in cases involving the Service Benefit Plan. The Supreme Court noted that the Second Circuit "acknowledged . . . the case involved distinctly federal interests," *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 688 (2006), and then the Supreme Court in its own right stated that "distinctly federal interests are involved" because the money at issue impacts "a federal fund," and because the OPM-BCBSA contract "is negotiated by a federal agency and concerns federal employees." *Id.* at 696; *see Empire HealthChoice Assurance, Inc. v. McVeigh*, 396 F.3d 136, 150 (2d Cir. 2005) (Sack, J., concurring). The second prong of the test is satisfied here because there is a significant conflict because the federal contract and the Alaska Prompt Pay Act. The Alaska Prompt Pay Act, at least according to Plaintiffs, requires that Premera pay claims within 30 calendar days and limits Premera's ability to request information to determine if the services were properly billed. The contract, on the other hand, requires the use of an administrative process to challenge a benefits denial, contains more lenient timeframes for adjudicating claims, and allows Premera to obtain broad categories of information and documentation to establish that the services at issue are properly billed under the Service Benefit Plan. Displacement by federal common law is a potent defense within the Ninth Circuit, due to the precedents holding that the liability of government contractors is controlled by federal common law. *See New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953 (9th Cir. 1996); *Am. Pipe & Steel Corp. v. Firestone Tire & Rubber Co.*, 292 F.2d 640, 643 (9th Cir. 1961).

24. The court in *Jacks* found each of these three defenses – preemption, sovereign immunity, and displacement by federal common law – to be colorable for purposes of the federal officer removal statute. *Jacks*, 701 F.3d at 1235; *see also Omega Hosp.*, 592 F. App'x at 272.

## Removal Under 28 U.S.C. § 1441 Based on Federal Common Law

25. Plaintiffs' claims regarding Service Benefit Plan enrollees make this case removable not just under the federal officer removal statute, but also under 28 U.S.C. § 1441(a) because federal question jurisdiction exist under 28 U.S.C. § 1331 by virtue of the fact that the Service Benefit Plan-related claims are governed by federal common law.

26. As demonstrated above, federal common law governs this case as it relates to claims involving Service Benefit Plan enrollees. That is not only a defense to Plaintiffs' state law cause of action, but it also means that federal question jurisdiction exists under 28 U.S.C. § 1331, and thus that the case is removable under 28 U.S.C. § 1441(a). *See, e.g., New SD*, 79 F.3d at 954-55 (affirming denial of remand in case removed to federal court on the basis that interpretation of a subcontract under a government contract was governed by federal common law).

## Removal Under 28 U.S.C. § 1441 Based on Complete Preemption Under ERISA

27. Finally, this case also is removable pursuant to 28 U.S.C. § 1441(a) based on federal question jurisdiction existing under 28 U.S.C. § 1331, because some of Plaintiffs' claims are completely preempted by ERISA. "[W]hen the federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. ERISA is one of these statutes." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-08 (2004) (internal quotations and citations omitted). "Under *Davila*, a state-law cause of action is completely preempted if (1) 'an individual, at some point in time, could have brought the claim under ERISA § 502(a)(1)(B)', and (2) 'where there is no other independent legal duty that is implicated by a defendant's actions.'" *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 946 (9th Cir. 2009) (quoting *Davila*, 542 U.S. at 210).

28. The first element of the test is met because Plaintiffs purportedly have obtained assignments of benefits from the enrollees in ERISA plans (were there no assignments, Plaintiffs' would have no possible rights under the Alaska Prompt Pay Act), and thus Plaintiffs have the ability to sue under ERISA to obtain the benefits Plaintiffs assert are due it in this case. *See Misic v. Bldg. Serv. Emps. Health & Welfare Trust*, 789 F.2d 1374, 1379 (9th Cir. 1986); *see also Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1350-53 (11th Cir. 2009).

29. The second prong of the *Davila* test is also met. Even though purportedly based on the Alaska Prompt Pay Act, Plaintiffs' claims arise under ERISA, to the extent those claims relate to patients enrolled in ERISA-governed plans. Essentially, the state law – if it is not preempted by ERISA – becomes enforceable as a "substantive term" of the ERISA plan. *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 860-61 (7th Cir. 1997). Even if couched in state law terms, lawsuits to enforce such substantive state laws are completely preempted by ERISA and thus governed by federal law and removable. *Arana v. Ochsner Health Plan*, 338 F.3d 433, 438-40 (5th Cir. 2003) (*en banc*).

30. Because Plaintiffs seek, among other things, to force Premera "to process the laboratory claims at issue" under one or more ERISA-governed health plans and to pay "interest on the unprocessed clean claims" (Compl. at p. 9), and because Plaintiffs have purportedly obtained assignments of benefits from the enrollees in those plans and can thus sue under ERISA to obtain the benefits at issue or to enforce the plan terms (including any incorporated state laws), the doctrine of complete preemption confers federal-question jurisdiction under 28 U.S.C. § 1331.

31. Pursuant to 28 U.S.C. § 1446(d), Premera will promptly provide written notice of

this removal to the Superior Court for the State of Alaska, Third Judicial District at Anchorage.

DATED this 29th day of October, 2015.

> LANE POWELL LLC
> Attorneys for Defendant
> Premera Blue Cross Blue Shield of Alaska
>
> By  s/ Gwendolyn C. Payton
>     Gwendolyn C. Payton, ABA No. 9712101

I certify that on October 29, 2015, a copy of
the foregoing was served by mail on:

Kevin T. Fitzgerald
Ingaldson Fitzgerald, P.C.
813 W Third Avenue
Anchorage AK 99501-200

_____

**Notice of Removal**
*Zipperer .* (Case No. 3:15-cv-00208-JWS) Page 17 of 17

Case 3:15-cv-00208-JWS   Document 1   Filed 10/29/15   Page 17 of 17