# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

JOHN D. ZIPPERER, JR., M.D.,

    Plaintiff,

vs.

PREMERA BLUE CROSS BLUE SHIELD OF ALASKA,

    Defendant.

3:15-CV-00208 JWS

ORDER AND OPINION

[Re: Motion at docket 26]

## I. MOTION PRESENTED

At docket 26, Defendant Premera Blue Cross and Blue Shield of Alaska ("Premera") filed a motion to dismiss the First Amended Complaint filed by John D. Zipperer, Jr., M.D. ("Plaintiff"). Plaintiff responded at docket 31. Premera replied at docket 35. Oral argument was heard on July 27, 2016.

## II. BACKGROUND

Plaintiff is a doctor practicing in Alaska. He owns and operates Zipperer Medical Group ("ZMG"), which is a clinic that specializes in providing interventional pain management and addiction recovery services in Anchorage, Wasilla, Eagle River, and Fairbanks. The dispute in this case involves unpaid insurance claims ZMG filed with Premera for laboratory services that were provided to patients enrolled in various

Premera health plans with dates of service ranging from December 2014 to the present. Plaintiff asserts that all the insurance claims at issue were properly assigned to him from insured patients.

ZMG operates laboratories in Alaska and Tennessee. According to Plaintiff's complaint, the laboratory in Tennessee is a "physician office laboratory," as that term is defined under federal regulations because it is owned by ZMG, bills under ZMG's billing number, is used solely for ZMG patients, and is registered with Medicare as a location of the physician group.[1] Its Alaska laboratory does not maintain a certain compliance certification and, as a result, cannot process some types of laboratory tests needed by ZMG patients. Therefore, ZMG uses its Tennessee laboratory when necessary to service its Alaskan patients. Plaintiff alleges that for the laboratory claims at issue here, the insured patient would meet with a doctor in Alaska and provide a sample. The sample was then sent to the Tennessee laboratory for processing.

When filing a claim for payment for these Tennessee laboratory services, ZMG completes Premera's standard claim form referred to as the "HCFA 1500." In Box 32 of that form, ZMG marks that the laboratory service location was Alaska, not Tennessee, because Alaska is where the doctor and patient had the face-to-face contact and where the sample was taken from the patient. Plaintiff asserts that this practice is proper and required under HIPAA and its transaction and code set rules. However, to be transparent, ZMG also lists the Tennessee laboratory's identification number in Box 23 of the form to show that the samples were processed in Tennessee rather than Alaska. Premera believes that Box 32 of the form should reflect that the laboratory services were performed in Tennessee regardless of where the doctor-patient contact took place. Premera also asserts that claims for laboratory services performed for patients enrolled in Premera's health insurance plan for federal employees (referred to as the

---

[1] Based on correspondence between ZMG and Premera, it appears as if Premera does not agree that the Tennessee laboratory should be considered a physician office laboratory.

"Service Benefit Plan") should be sent to Blue Cross and Blue Shield of Tennessee for payment processing.

On March 19, 2015, Premera wrote ZMG informing ZMG that Premera was placing it on pre-payment review of all laboratory claims. The letter stated that pre-payment review was necessary to review laboratory codes used by ZMG and that any electronic insurance claim submitted to Premera "will pend and a statement may be sent to the provider indicating the need for additional documentation in order to determine the location where the laboratory services were performed."[2] It also stated that ZMG was filling out Box 32 improperly and further instructed that for patients enrolled in the federal Service Benefit Plan, claims for laboratory tests processed in Tennessee must be sent to Blue Cross Blue Shield of Tennessee. [3]

Plaintiff filed its complaint against Premera. Count I alleges a violation of Alaska's Prompt Pay Statute, AS § 21.36.495. The Prompt Pay Statute requires Premera to pay insurance claims or provide notice to the claimant as to what is needed to process the claim or setting forth the reasons for denial within thirty calendar days of its receipt of the claim. Plaintiff alleges that Premera has failed to pay, deny, or provide the necessary notice as to the insurance claims at issue here. He further alleges that Premera's decision to place ZMG on pre-payment review is "in fact a pretext to avoid application of the [Prompt Pay Statute]."[4] Plaintiff asks that the court "declare that [Permera] is in violation of the [Prompt Pay Statute] due to its failure to pay or deny the claims at issue and failure to meet the specific notice requirements within 30 calendar days after it received the claim"[5] and that the court order Premera to pay the claims with interest as required under the law. He also requests that the court direct Premera to

---

[2]Doc. 23-1 at p. 2.

[3]*Id.*

[4]Doc. 23 at p.8, ¶ 47.

[5]Doc. 23 at p.9, § 2.

rescind its notice placing ZMG under pre-payment review. Count II is brought pursuant to HIPAA. Plaintiff asks the court to "declare that ZMG has submitted all laboratory claims at issue with the proper [code] in Box 32, as is consistent with HIPAA."[6]

Both parties agree that some of the insurance claims at issue involve patients enrolled in the Service Benefit Plan, which is created pursuant to FEHBA, and some of the insurance claims at issue involve patients enrolled in health benefit plans governed by ERISA. The remaining claims are those brought under other Premera health insurance plans. Premera argues: 1) that Count I should be dismissed as to Plaintiff's insurance claims for laboratory services rendered to patients insured under the Service Benefit Plan because the Prompt Pay Act is expressly preempted pursuant to FEHBA, displaced by federal common law, impliedly preempted by FEHBA, and barred by the federal government's sovereign immunity; and 2) that Count I should be dismissed as to Plaintiff's insurance claims relating to laboratory services rendered to patients insured under self-funded ERISA-governed health benefit plans because the Prompt Pay Statute is preempted by ERISA as to those claims. Premera also argues that Count I should be dismissed in its entirety. It asserts Plaintiff has not adequately stated a claim for which relief can be granted under the Prompt Pay Statute. Premera also argues that Count I should be dismissed as to all insurance claims because Plaintiff has failed to exhaust his administrative remedies provided for under Alaska's Insurance Code.

As for the HIPAA claim in Count II, Premera argues that Plaintiff does not have standing to bring such an action in relation to insurance claims filed under the federal Service Benefit Plan.

### III. STANDARD OF REVIEW

Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims. In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and

---

[6]Doc. 23 at p. 9, ¶ 6.

construed in the light most favorable to the nonmoving party."[7] To be assumed true, the allegations, "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."[8] Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[9] "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[10]

To avoid dismissal, a plaintiff must plead facts sufficient to "'state a claim to relief that is plausible on its face.'"[11] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[13] "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[14] "In sum, for a complaint to survive a motion to

---

[7]*Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[8]*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

[9]*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[10]*Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[11]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[12]*Id.*

[13]*Id.* (citing *Twombly*, 550 U.S. at 556).

[14]*Id.* (quoting *Twombly*, 550 U.S. at 557).

-5-

dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[15]

## IV. DISCUSSION

### A. Failure to state a Prompt Pay Statute claim

Premera argues that Count I should be dismissed in its entirety because Plaintiff failed to adequately allege a violation of Alaska's Prompt Pay Statute. It argues that its March 19, 2015 letter to Plaintiff constituted proper notice under the Prompt Pay Statute, and therefore, Plaintiff's claims are not "clean" claims subject to prompt payment. The letter, however, is not adequate notice under AS §21.36.495(b). According to the statute, the notice required must provide "the basis for denial or the specific information that is needed for the insurer to adjudicate the claim."[16] Here, the letter did not address any specific insurance claim, but rather, just put Plaintiff on notice that Premera was placing ZMG on pre-payment review status. That is, it did not state that it was going to deny a claim or a group of claims, nor did it set forth "the specific information that is needed for the insurer to adjudicate the claim." Rather, the letter merely stated that any electronically submitted laboratory claims "will pend and a statement may be sent to the provider indicating the need for additional documentation."[17]

Premera also argues that Plaintiff's claim for prompt payment in Count I is inadequate because Premera "is within its contractual right to keep Plaintiff on prepayment review for reasons unrelated to Box 32 or the entity to which [Plaintiff] submitted the claim."[18] However, as Plaintiff notes in his response brief, his "argument

---

[15]*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Starr*, 652 F.3d at 1216.

[16]A.S. § 21.36.495(b).

[17]Doc. 23-1 at p. 2.

[18]Doc. 26 at p. 43.

has nothing to do with whether [Premera] has the general contractual right to place a provider on prepayment review."[19] His argument is that regardless of ZMG's prepayment status, Premera has nonetheless violated the Prompt Pay Statute by failing to pay or provide the requisite notice. The court concludes that Count I properly alleges a violation of the Prompt Pay Statute.

**B.      Failure to exhaust administrative remedies**

Premera argues that Count I should be dismissed in its entirety because Plaintiff failed to exhaust his state administrative remedies. Here, administrative remedies are provided for under the state insurance code. An insured may file a complaint with the director of Alaska's division of insurance and then the director may conduct an investigation to determine whether a person is engaged in an unfair method of competition or a practice prohibited under Chapter 36 of the insurance code, which includes the Prompt Pay Statute.[20] The director may then provide for an administrative proceeding as set forth in the insurance code.[21] However, while an administrative remedy is provided for under Chapter 36 of the insurance code, there is nothing in the insurance code, including the Prompt Pay Statute itself, that indicates this administrative process is a mandatory step before an insured, or his or her provider, can file a lawsuit against an insurer.

Premera contends that while the language of the statute is not mandatory the court should nonetheless conclude that exhaustion is required. It argues that exhaustion is required any time an administrative remedy is provided for under a statute and when the disputed matter involves factual issues rather than a challenge to the validity of the statute itself. The court disagrees with Premera's assessment of the law. Under Alaska law, exhaustion is usually required when the matter involves an agency

---

[19]Doc. 31 at p.11, n.3.

[20]AS § 21.36.910(a).

[21]AS § 21.36.910(b).

decision, which is not the case here.[22]  When discussing whether a court should require exhaustion the Alaska Supreme Court has indicated that the court must assess the "benefits obtained through affording an agency an opportunity to review the particular action in dispute" and that one of the purposes of the exhaustion requirement is "to correct its own errors so as to moot judicial controversies."[23]  Indeed, the cases that Premera relies on to support its exhaustion argument involve disputes over agency actions[24] or employment disputes with a municipal employer,[25] not private insurance disputes.  The court declines to require Plaintiff to pursue an administrative remedy.

## C. FEHBA preemption of the Prompt Pay Statute as to Service Benefit Plan insurance claims

Premera argues that Count I should be dismissed as to Plaintiff's insurance claims that were filed for laboratory services rendered to patients enrolled in the federal Service Benefit Plan.  It argues that as to these insurance claims the Prompt Pay Statute is preempted by the contract terms between the federal government and Blue Cross Blue Shield of Alaska ("BCBSA") pursuant to FEHBA, 5 U.S.C. § 8902(m)(1).

### 1. FEHBA in general

Congress enacted FEHBA to provide health benefits to federal employees.  Under FEHBA, the U.S. Office of Personnel Management ("OPM") has the discretion to establish insurance plans with multiple insurers.[26]  OPM contracted with BCBSA to provide the Service Benefit Plan to federal employees in Alaska.  Premera is a local

---

[22]*Smart v. State, Dep't of Health & Soc. Servs.*, 237 P.3d 1010, 1015 (Alaska 2010) ("Where . . . a regulation provides for administrative review of *an agency decision*, a person ordinarily must exhaust such administrative remedies before bringing an action in superior court challenging the decision." (emphasis added)).

[23]*Ben Lomond, Inc. v. Municipality of Anchorage*, 761 P.2d 119, 121-22 (Alaska 1988)

[24]*State, Dep't of Revenue v. Andrade*, 23 P.3d 58 (2001); *Smart*, 237 P.3d at 1015.

[25]*Bruns v. Municipality of Anchorage*, 32 P.3d 362 (2001).

[26]5 U.S.C. §§ 8902-03, 8913.

-8-

BCBSA licensee that insures and administers the Service Benefit Plan. Under FEHBA, OPM has the authority to determine the benefit structure of each plan and set forth the plan's statement of benefits.[27] OPM has established a mandatory administrative remedy at the agency level for those who believe that the carrier has wrongfully denied benefits.[28] If OPM upholds the denial of benefits, the enrollee, or his or her medical provider, can bring suit only against OPM and not the carrier or carrier's subcontractors. Furthermore, there is no allowance for the recovery of penalties or interest.[29]

### 2. Preemption

FEHBA contains an express preemption provision, 5 U.S.C. § 8902(m)(1), which states as follows:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.[30]

"The policy underlying section 8902(m)(1) is to ensure uniformity in the administration of FEHBA benefits."[31] Under the statute, two conditions must be met to warrant preemption: "(1) the FEHBA contract terms at issue 'relate to the nature, provision, or extent of coverage or benefits (including payment with respect to benefits)' and (2) the state or local law 'relates to health insurance or plans.'"[32] "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a *connection with* or

---

[27] 5 U.S.C. § 8902(a), (d); 5 U.S.C. § 8907.

[28] 5 C.F.R. §§ 890.105, .107(d)(1).

[29] 5 C.F.R. § 890.107(c).

[30] 5 U.S.C. § 8902(m)(1).

[31] *Hayes v. Prudential Ins. Co. of Am.*, 819 F.2d 921, 925 (9th Cir. 1987).

[32] *Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life & Health Ins. Co.*, No. 15cv1671, 2016 WL 1253867, at *7 (S.D. Cal. Mar. 11, 2016) (quoting 5 U.S.C. § 8902(m)(1)).

-9-

*reference to* such a plan."³³ Under FEHBA's exemption provision, "state law—whether consistent or inconsistent with federal plan provisions—is displaced on matters of 'coverage or benefits'" under FEHBA.³⁴

Premera has identified the specific contract provisions between OPM and BCBSA that relate to "payments with respect to benefits" that should preempt Alaska's Prompt Payment Statute. These provisions include ones that (1) specify the particular remedies available in disputes over payments of FEHBA benefits, but that do not allow for interest; (2) call for the processing of claims within time frames that are more lenient than the thirty days required under the Prompt Pay Statute; and (3) allow Premera to request information needed to demonstrate the claims are payable before Premera pays a claim.³⁵ Plaintiff argues that these contract provisions are procedural ones not aimed at "coverage, benefits, or payments with respect to benefits" and thus do not preempt the Prompt Pay Statute.

The Fifth Circuit has held that other states' prompt pay laws are preempted by FEHBA insurance contracts with similar terms. In *Burkey v. Government Employees Hospital Association,* the court held that Louisiana's prompt pay statute calling for penalties for delays in processing health insurance claims was preempted under § 8902(m)(1).³⁶ It rejected the plaintiff's argument that her claim for penalties against the insurer under the state's prompt pay law only related to remedies and not to matters of coverage or benefits.³⁷ The court stated that "[t]ort claims arising out of the manner in which a benefit claim is handled are not separable from the terms of the contract that

---

³³*Botsford v. Blue Cross & Blue Shield of Mont., Inc.*, 314 F.3d 390, 394 (9th Cir. 2002).

³⁴*Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 686 (2006).

³⁵Doc. 35 at p. 6.

³⁶983 F.2d 656 (5th Cir. 1993).

³⁷*Id.* at 660.

governs benefits."[38] The Fifth Circuit reasserted its preemption holding as to Texas's prompt pay law earlier this year. It stated that "[b]y imposing penalties for late payments, [the state prompt pay law] mandates that insurers process and pay claims within the set time periods," and, as a result the law, "would directly affect the operation of the plans and expand FEHBA carriers' duties under the plans."[39]

The Ninth Circuit has not specifically addressed preemption of a state prompt pay law pursuant to FEHBA. However, in *Hayes v. Prudential Insurance Co. of America,* the court examined whether the plaintiff's state law claims, which involved "the manner in which a benefit claim is handled," were preempted pursuant to FEHBA.[40] It rejected the plaintiff's argument that preemption does not apply to laws that deal with how a claim is processed. Analogously, a state prompt pay law involves the manner in which a benefit claim is handled, and therefore preemption is likewise proper.[41]

Plaintiff argues that the Prompt Pay Statute is analogous to subrogation and reimbursement laws and that such laws have not been preempted by FEHBA, citing a Seventh Circuit case, *Blue Cross Blue Shield of Illinois v. Cruz*.[42] However, as noted by Premera, Plaintiff misconstrues the case law. Most federal courts have actually held

---

[38]*Id.*

[39]*Health Care Serv. Corp. v. Methodist Hosps. of Dallas*, 814 F.3d 242, 255 (5th Cir. 2016).

[40]819 F.2d 921, 926 (9th Cir. 1987).

[41]*Cf. Tantuwaya*, 2016 WL 1253867, at *8 (holding that the plaintiff's state law claim that he was entitled to be paid for non-covered emergency room services based on California's Knox-Keene Health Care Service Act, which requires insurers to pay emergency room doctors reasonable and customary value for the emergency services rendered to the insurer's enrollees, even if the service rendered is not covered under the insurance plan, was preempted under § 8902(m)(1) because, while not a dispute about coverage under the contract terms, it nonetheless related to the processing and administration of the enrollee's claims and reasoning that the application of the act would expand the obligations of the insured beyond the terms of the contract).

[42]495 F.3d 510, 512 (7th Cir. 2007).

-11-

that state laws regarding subrogation and reimbursement are preempted under § 8902(m)(1) because subrogation and reimbursement are tied directly to payments with respect to benefits.[43] Furthermore, *Cruz* is inapplicable here because the Seventh Circuit was not addressing whether the state law at issue—a common fund doctrine— was related to health insurance plans and implicated coverage or benefit terms. Rather, it was dealing with the issue of whether § 8902(m)(1) conferred exclusive federal jurisdiction by completely preempting any and all state laws that might implicate a FEHBA health insurance plan. It rejected the insurer's argument that FEHBA's preemption provision was broad enough to completely preempt any state law dealing with insurance contracts, finding that § 8902(m)(1) was not a jurisdiction-conferring provision. Indeed, after finding a lack of federal jurisdiction and sending the case back to state court, the Seventh Circuit nonetheless recognized that the insurer could plead FEHBA preemption in state court based on the insurance contract terms as a defense to the plaintiff's invocation of the state common fund doctrine.[44]

Plaintiff also relies on a Supreme Court case, *Empire Healthchoice Assurance, Inc. v. McVeigh*,[45] for the proposition that the court should apply a limited reading of § 8902(m)(1). As with *Cruz*, however, *Empire* dealt with the jurisdictional doctrine of complete preemption. It did not discuss the ordinary preemption issue presented here. Indeed, other courts have found *Empire's* holding limited in its reach: "As we view [*Empire*], the Supreme Court held only that federal common law did not displace the entire area of state law involving 'FEHBA-authorized contracts at large.' The Court left open the possibility that state law could be displaced more narrowly."[46]

---

[43]*See* doc. 35 at p. 8.

[44]*Cruz,* 495 F.3d at 514.

[45]547 U.S. 677 (2006).

[46]*Bell v. Blue Cross & Blue Shield of Okla.*, No. 14-3731, 2016 WL 3027487, at *5 (8th Cir. May 26, 2016).

Premera makes alternative arguments as to why the Prompt Pay Statute should not apply here, including an argument that federal common law governs and an argument that sovereign immunity prevents Plaintiff from suing Premera as to insurance claims brought under the Service Benefit Plan. The court need not address these arguments given that under FEHBA, 5 U.S.C. § 8902(m)(1), the Prompt Pay Statute is preempted by the contract terms governing the Service Benefit Plan and therefore does not apply to Plaintiff's insurance claims for services provided to patients enrolled in the Service Benefit Plan.

**D.    ERISA preemption of the Prompt Pay Statute as to insurance claims made under self-funded ERISA benefit plans**

Premera argues that ERISA's preemption provision preempts Alaska's Prompt Pay Statute as to Plaintiff's insurance claims for services rendered to patients enrolled in self-funded, ERISA-governed benefit plans. ERISA contains a broad preemption that "expressly preempts all state laws 'insofar as they may now or hereafter relate to any employee benefit plan.'"[47] ERISA's preemption provision is limited by a "savings clause."[48] Under the savings clause, a state law governing the insurance industry escapes preemption. However, ERISA also contains a "deemer clause" that brings laws that regulate self-funded ERISA benefit plans back within the scope of the statute's preemption provision.[49] Application of the deemer clause means that a self-funded ERISA benefit plan cannot become subject to a state's otherwise "saved" insurance laws.[50] Consequently, the Prompt Pay Statute would not apply to self-funded

---

[47] *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005) (quoting 29 U.S.C. § 1144(a)).

[48] 29 U.S.C. § 1144(b)(2)(A).

[49] 29 U.S.C. § 1144(b)(2)(B).

[50] *See Pilot Life Ins. Co v. Dedeaux*, 481 U.S. 41, 45 (1987); *FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990).

health benefit plans if the statute is otherwise premempted under ERISA—that is, if it "relates to" an employee benefit plan.

A state statute "relates to" an employee benefit plan, and is therefore preempted, if it has (1) a "reference to" ERISA plans or (2) a "connection with" such plans.[51] A state law has a "reference to" an ERISA plan when it "acts immediately and exclusively upon ERISA plans" or when "the existence of ERISA plans is essential to the law's operation."[52] A state law has an impermissible "connection with" ERISA plans, when the law "'governs . . . a central matter of plan administration'" or "'interferes with nationally uniform plan administration.'"[53]

The court concludes that Alaska's Prompt Pay Statute has the requisite connection with an ERISA health benefit plan. Indeed, "[c]ourts addressing the ERISA pre-emption of claims brought under similar 'prompt pay' state statutes tend to find preemption unless the claim for payment arises from an independent agreement between provider and plan."[54] In *America's Health Ins. Plans v. Hudgens*, the Eleventh Circuit held that Georgia's prompt-pay provision was preempted as applied to self-funded ERISA plans because the provision interfered with uniform administration of benefits.[55] It stressed that the while the law's "requirements will not necessarily directly alter the coverage decision-making process" it nonetheless "*will* compel certain action (prompt benefit determination and payments) by plans and their administrators" and

---

[51]*Gobeille v. Liberty Mut. Ins. Co.*, 136 S.Ct. 936, 943 (2016).

[52]*Id.* (internal quotations omitted); *Golden Gate Rest. Ass'n v. City & County of San Francisco,* 546 F.3d 639, 657 (9th Cir. 2008).

[53]*Gobeille*, 1326 S.Ct. at 943 (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001)).

[54]*OSF Healthcare Sys. v. Contech Constr. Prods. Inc. Grp. Comprehensive Health Care*, No. 1:13-cv-01554, 2014 WL 4724394, at * 6 (C.D. Ill. Sept. 23, 2014).

[55]742 F.3d 1319 (11th Cir. 2014).

-14-

"impact the *amount* paid to beneficiaries in the case of late payment or notice."[56] Consequently, "employers offering self-funded health benefit plans would be faced with different timeliness obligations in different states, thereby frustrating Congress's intent."[57] Similarly, Alaska's Prompt Pay Statute compels payment timeframes and impacts the amount paid by an employer to a claimant under a self-funded ERISA plan, and therefore the reasoning set forth in *Hudgens* is applicable here. Plaintiff did not cite any Ninth Circuit authority that specifically conflicts with *Hudgens* or would otherwise suggest that the reasoning behind *Hudgens* should not apply here.

E. **Standing to bring HIPAA action as to Service Benefit Plan insurance claims**

Premera argues that Count II should be dismissed as to Plaintiff's insurance claims that were filed for laboratory services rendered to patients enrolled in the Service Benefit Plan because Plaintiff does not have standing to bring such an action as to these claims. It argues that Plaintiff does not have standing because the requested remedy—a declaration that ZMG has submitted all laboratory insurance claims at issue with the proper [code] in Box 32 as is consistent with HIPAA—will not redress the injury here. According to Premera, even if ZMG is checking Box 32 correctly, those claims still need to be filed with Blue Cross and Blue Shield of Tennessee ("BCBST") to receive payment. Originally, Premera did not provide any support for its argument that these insurance claims need to be submitted to BCBST, but with the court's permission Premera filed supplemental documents that it claims support its assertion, along with additional briefing on the matter of standing.[58] Plaintiff filed a response to Premera's filing.[59] Plaintiff disputes Premera's interpretation of the documents submitted; he stresses that the provisions Premera relies on to support its argument are not

---

[56]*Id.* at 1331.

[57]*Id.*

[58]Doc. 39.

[59]Doc. 41.

applicable to insurance claims involving out-of-state physician office laboratories where the physician-patient encounter occurs in Alaska. After due consideration of both parties' filings, the court cannot conclude at this motion-to-dismiss stage that the documents provided are sufficient to demonstrate that the Service Benefit Plan insurance claims at issue must be filed in Tennessee. It appears that resolving the issue of where Service Benefit Plan insurance claims should be filed is intertwined and overlaps with the underlying issue in Count II—whether ZMG is properly coding its insurance claims under HIPAA. Resolving Count II will involve a determination as to the proper classification of ZMG's Tennessee laboratory and consideration of whether the location of the face-to-face contact between physician and patient is determinative. Those are factual and legal issues that also impact where the insurance claims should be filed based on the controlling contracts and procedure manuals provided by Premera in its supplemental filing. The court cannot conclude, as Premera argues, that resolving the coding issue will not affect how Premera processes and pays Plaintiff's laboratory claims. As Plaintiff points out, there are facts alleged in the complaint and in the correspondence attached to the complaint that suggest otherwise.[60] Moreover, even if Plaintiff files these types of insurance claims with BCBST, he contends that he is legally required under HIPAA and its related regulations and rules to fill out Box 32 with Alaska listed as the laboratory service location as he has been doing. If that is the case, BCBST would not pay the claim either.

Premera also asserts that Count II "offers no tangible relief on its own" if the court concludes that the Prompt Pay Statute is preempted pursuant to FEHBA as to Service Benefit Plan insurance claims, as it has here. It argues that because Count II includes the allegation that Premera is using the Box 32 issue as a pretext to avoid the Prompt Pay Statute and because the application of the Prompt Pay Act to Service Benefit Plan insurance claims is preempted by FEHBA, there is no remaining

---

[60] See Doc. 23 at p.6, ¶¶ 34-35; Doc. 23-1 at p.2.

substantive dispute between the parties as to these types of insurance claims. The court, however, is not persuaded by Premera's argument that there is no longer a substantive dispute as it relates to HIPAA and Service Benefit Plan insurance claims. As Plaintiff notes in its response to Premera's supplemental filing, the complaint alleges, and the correspondence between the parties shows, that Premera has represented to Plaintiff that ZMG's prepayment review status will only be lifted once ZMG properly fills out the HCFA 1500 form. Therefore, resolution of the coding issue is necessary before Plaintiff can receive payment on these insurance claims, regardless of the Prompt Pay Statute.[61]

## V. CONCLUSION

Based on the preceding discussion, Premera's motion to dismiss at docket 26 is GRANTED IN PART AND DENIED IN PART as follows: Count I is dismissed only as to insurance claims filed in relation to patients enrolled in the Service Benefit Plan and insurance claims filed in relation to patients enrolled in self-funded ERISA health benefit plans. Count II remains in its entirety.

DATED this 16th day of August 2016.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[61] See Doc. 23 at p.6, ¶¶ 34-35; Doc. 23-1 at p. 2.