# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | |
|---|---|
| John D. Zipperer, Jr., M.D., *et al*., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> Premera Blue Cross Blue Shield of ) <br> Alaska, ) <br> ) <br> Defendant. ) <br> _____ ) | 3:15-cv-00208 JWS <br><br> **ORDER AND OPINION** <br><br> [Re: Motion at Docket 54] |

## I. MOTION PRESENTED

At docket 54 plaintiffs John D. Zipperer, Jr., M.D. and John D. Zipperer, Jr., M.D., LLC dba Zipperer Medical Group (collectively, "ZMG") move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Defendant Premera Blue Cross Blue Shield of Alaska ("Premera") opposes at docket 69 and submits declarations in support of its opposition at dockets 70, 71, and 72. ZMG replies at docket 75.

Oral argument was heard on May 4, 2017.

## II. BACKGROUND

ZMG is an "interventional pain management and addiction recovery" physician practice that treats "patients with a face-to-face encounter at one of [its] Alaska clinics," "obtain[s] samples for testing," and sends the samples to its office in Tennessee for processing.[1] ZMG's complaint alleges that Premera has not paid ZMG for an unspecified number of health insurance claims "with dates of service ranging from December 2014 to the present."[2] All of the claims at issue are for services performed in Tennessee.[3]

For reasons unrelated to this case Premera placed ZMG's claims on "prepayment review" status in 2014.[4] According to Premera, prepayment review "means that before Premera issues a payment, it will manually review the underlying medical records for the service billed rather than processing the claim automatically."[5] When Premera took ZMG off prepayment review status in January 2015 ZMG resubmitted to Premera an unspecified number of claims.[6] To do so ZMG used a form known as the "HCFA 1500." Box 32 of the form asks for the "service facility location

---

[1]Doc. 23 at 2 ¶¶ 4–5; 3 ¶¶ 12–13.

[2]*Id.* ¶ 7.

[3]*Id.* at 3 ¶ 11.

[4]Doc. 75 at 2.

[5]Doc. 70 at 2 ¶ 7. *See also Bader v. Wernert*, 178 F. Supp. 3d 703, 713 (N.D. Ind. 2016) ("A provider on prepayment review is not paid for a submitted claim until a prepayment review analyst has reviewed the claim to verify its accuracy. In contrast, a provider not on prepayment review has a claim paid without it being reviewed by a prepayment review analyst.").

[6]Doc. 23 at 6 ¶ 31; doc. 45 at 5 ¶ 32.

-2-

information."[7]  For each claim at issue here ZMG filled in Box 32 with the address of the Alaska clinic where the sample was obtained, not the Tennessee laboratory where the billed service was performed.

In a letter dated March 19, 2015, Premera put ZMG back on prepayment review "due to ZMG's improper completion of box 32 on the HCFA 1500 claim form."[8]  The letter notes that "Box 32 on HCFA 1500 claim form must accurately reflect the location where the laboratory service was performed."[9]  ZMG responded to Premera by insisting that it is filling out Box 32 correctly.[10]

According to ZMG, Premera sent ZMG "voluminous information requests related to the claims at issue" in May.[11]  ZMG does not provide the court with the quantity of these requests; it provides the court with only one example dated May 6, 2015.[12]  In the example Premera asks ZMG to submit "documentation in support of the laboratory codes billed; laboratory/pathology results/reports."[13]

In September 2015 ZMG filed an action against Premera in the Alaska Superior Court alleging that Premera is violating Alaska's "[p]rompt payment of health care

---

[7]*See* doc. 23-4 at 25.

[8]Doc. 23-2 at 2.

[9]*Id.*

[10]Doc. 23-3.

[11]Doc. 54 at 8.

[12]Doc. 23-4 at 34.

[13]*Id.*

insurance claims" statute, AS 21.36.495 ("Prompt Payment Statute").[14] Premera removed the case to this court pursuant to 28 U.S.C. § 1446(a).[15] ZMG has since amended its complaint to add a second count that seeks a declaratory judgment that it is filling out Box 32 correctly according to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").[16]

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[17] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[18] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[19] However, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[20]

---

[14] Doc. 1-1.

[15] Doc. 1.

[16] Doc. 23 at 8–9.

[17] Fed. R. Civ. P. 56(a).

[18] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[19] *Id.*

[20] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

-4-

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[21] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[22] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[23] All evidence presented by the non-movant must be believed for purposes of summary judgment ,and all justifiable inferences must be drawn in favor of the non-movant.[24] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[25]

## IV. DISCUSSION

### A. Alaska's Prompt Payment Statute

Alaska's Prompt Payment Statute was enacted in 2006.[26] Section 495(a) states that a health care insurer must either pay or deny a "clean claim" within 30 days of

---

[21]*Id.* at 323.

[22]*Id.* at 323–25.

[23]*Anderson,* 477 U.S. at 248–49.

[24]*Id.* at 255.

[25]*Id.* at 248–49.

[26]Ch. 80, § 32, SLA 2016 (adding Section 128 to Title 21, Chapter 36 of the Alaska Statutes. Section 128 was later renumbered as Section 495).

receiving it.[27] Section 495(b) has a notice requirement that applies if the insurer does not pay or denies a claim. If the insurer denies a claim, it must issue a notice that states the basis for the denial within 30 days of receipt of the claim; if the insurer otherwise does not pay a claim, it must provide a notice that states the specific information that the insurer needs to adjudicate the claim within 30 days of receipt of the claim.[28] The consequence of an insurer's failure to provide the notice required by § 495(b) is that "the claim is presumed a clean claim, and interest shall accrue at a rate of 15 percent annually beginning on the day following the day that the notice was due and continues to accrue until the date that the claim is paid."[29]

To establish a violation of § 495(b) a health care provider must show that (1) it submitted a claim to a health care insurer; (2) the insurer either did not pay or denied the claim; and (3) the insurer did not provide the notice required by § 495(b) within 30 days of receipt of the claim. ZMG asserts that Premera has committed two categories of § 495(b) violations. The first category involves claims for which Premera allegedly failed to provide any sort of timely notice. This category includes the unspecified quantity of claims that ZMG submitted to Premera between January 2015 and 30 days before Premera's May 2015 information requests. ZMG asserts that there is a lack of a genuine dispute regarding the fact that ZMG submitted these claims to Premera; that Premera either failed to pay or denied all of them; and that Premera did not provide

---

[27]AS 21.36.495(a).

[28]AS 21.36.495(b).

[29]AS 21.36.495(c).

-6-

ZMG with timely notices required by § 495(b) with regard to any of them.[30]  As a result, ZMG argues, claims in this "no notice" category are presumed to be clean and are payable.

The second category of § 495(b) violations involves the unspecified quantity of claims that ZMG submitted to Premera less than 30 days before Premera's May 2015 information requests.  ZMG alleges that these claims are also presumed to be clean because Premera's information requests do not comply with § 495(b) for the following reasons: (1) they seek records related only to Premera's legally incorrect interpretation of Box 32; (2) at the time the requests were made Premera was already in possession of all the information it needed to adjudicate the claims; (3) the requests do not seek specific information that Premera needed to adjudicate the claims; and (4) the requests instruct ZMG to submit the requested information as part of new claims, not as part of pending claims that could not be adjudicated without the requested information. Because Premera's information requests do not comply with § 495(b), ZMG argues, the claims in this "bad notice" category are also presumed to be clean and are payable.

ZMG bears the burden of proof at trial on its § 495(b) claim.  "When the party moving for summary judgment would bear the burden of proof at trial," it "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to

---

[30] Doc. 54 at 8 ("[F]or all laboratory claims submitted to Premera more than 30 calendar days prior to the corresponding Information Requests, Premera failed to pay, deny, or provide the requisite notice as required under the prompt pay law and thus the claims are presumed clean claims."); *id.* at 13 ("It cannot be disputed that Premera failed to pay or deny [this category of] claims within 30 calendar days of submission.").

-7-

its case."[31] To meet this burden, ZMG "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[32] Thus, ZMG "must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of [Premera] on the claim."[33] Only after ZMG meets this initial burden does the burden shift to Premera to present competing evidence supporting its defenses.[34]

ZMG seeks a judgment declaring that Premera is violating the Prompt Payment Statute "due to its failure to pay or deny the claims at issue and failure to meet the specific notice requirements within 30 calendar days after it received the claim [sic]."[35] But because ZMG has failed to support its assertion that the facts at issue cannot be genuinely disputed by "citing to particular parts of materials in the record,"[36] the court is obligated to deny its motion.[37]

ZMG cites no evidence which establishes that it submitted any claims to Premera that Premera either did not pay or denied, how many such claims it submitted,

---

[31] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).

[32] *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citation and quotations omitted).

[33] *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015).

[34] *C.A.R. Transp.*, 213 F.3d at 480.

[35] Doc. 54-3 at 2.

[36] Fed. R. Civ. P. 56(c)(A).

[37] *See Hotel 71,* 778 F.3d at 601.

or the dates on which Premera received them. Similarly, ZMG cites no evidence showing that Premera failed to provide ZMG with notices required by § 495(b) within 30 days of when it received these specific claims. ZMG does point to one example notice in the record dated May 6, 2015, but this notice is unavailing because it is impossible for the court to discern when Premera received the claim subject to the notice.[38] Because ZMG has fallen well short of meeting its initial burden of coming forward with evidence that would entitle it to a directed verdict if the evidence went uncontroverted at trial, ZMG's motion must be denied.

**B.     HIPAA**

One of the purposes of HIPAA is "'to improve the . . . efficiency and effectiveness of the health information system through the establishment of standards and requirements for the electronic transmission of certain health information.'"[39] In 2000 the Department of Health and Human Services ("DHHS") promulgated a rule implementing HIPAA that, among other things, adopts standards and code sets that covered entities must use.[40] 45 C.F.R. § 162.1102 provides that as of January 1, 2012, the applicable standard for professional health care claims is the "ASC X12 Standards for Electronic Data Interchange Technical Report Type 3-Health Care Claim: Professional (837), May 2006, ASC X12N/005010X222" ("the ASC X12N 837

---

[38]Doc. 23-4 at 34.

[39]HIPAA, Pub. L. No. 104-191, § 261, 110 Stat. 1936.

[40]Health Insurance Reform: Standards for Electronic Transactions, 65 Fed. Reg. 50,312, 50,367 (Aug. 17, 2000) (codified at 45 C.F.R. pt. 162).

standard").[41] The parties agree that the Medicare Claims Processing Manual issued by the Centers for Medicare and Medicaid Services ("CMS Manual")[42] provides authoritative guidance on the HIPAA standards.[43]

ZMG's HIPAA claim alleges that the HIPAA standards require it to enter the location of its physician's initial face-to-face encounter with the patient in Box 32 of the HCFA 1500, not the location where the laboratory service was rendered. This claim conflicts with the CMS Manual's instructions for Box 32, which state that the provider must supply "the location where the service was rendered . . . for all [place of service ("POS")] codes."[44] ZMG's main support for its argument to the contrary is the following example from the CMS Manual:

> For example, if the physician's face-to-face encounter with a patient occurs in the office, the correct POS code on the claim, in general, reflects the 2-digit POS code 11 for office. In these instances, the 2-digit POS code (Item 24B on the claim Form CMS-1500) will match the address and ZIP entered in the service location (Item 32 on the 1500 Form)—the physical/geographical location of the physician.[45]

ZMG interprets this example to mean that if the physician's face-to-face encounter with the patient occurred in an office, POS code 11 applies and the service location listed in

---

[41] 45 C.F.R. §§ 162.1102(b)(2)(iii)–(c).

[42] CTRS. FOR MEDICARE & MEDICAID SERVS., MEDICARE CLAIMS PROCESSING MANUAL Pub. No. 100-04, https://www.cms.gov/regulations-and-guidance/guidance/manuals/internet-only-manuals-ioms-items/cms018912.html.

[43] Doc. 54 at 21; doc. 69 at 5; doc. 70 at 2 ¶ 3.

[44] CMS Manual, Ch. 26 § 10.4 at 19 ("Effective January 1, 2011, for claims processed on or after January 1, 2011, submission of the location where the service was rendered will be required for all POS codes.").

[45] CMS Manual, Ch. 26 § 10.6 at 33.

-10-

Box 32 must match the location of that encounter regardless of where the billed service was actually performed. As Premera points out, however, ZMG omits the preceding sentence that states that the example pertains to claims for payment under the Medicare Physician Fee Schedule ("MPFS").[46] Because Premera asserts and ZMG does not dispute that the claims at issue here fall under the Clinical Laboratory Fee Schedule ("CLFS"), not the MPFS, this example does not apply. The CMS Manual does not state, as ZMG claims, that the physician is "required to complete Box 32 with the location of the physician-patient face-to-face encounter" *for all claims* where POS code 11 applies.[47] It merely states that if a physician seeks payment *for MPFS services* that are based on a face-to-face encounter with the patient in the physician's office, the "place of service" listed in Box 32 will generally be the location of the physician's office.

In reply ZMG cites several additional authorities. None are persuasive. First, ZMG cites the following sentence from Chapter 16 of the CMS Manual: "If a physician submits a claim for a service performed in a physician office laboratory, that claim is considered a physician claim and must meet the requirements for physician claims."[48] According to ZMG, this language supports its "position that laboratory claims performed in a physician office laboratory must be treated as a claim billed by the physician."[49] The flaw with this argument is that even if ZMG's claims are treated as physician

---

[46]*Id.* ("For purposes of payment under the Medicare Physician Fee Schedule (MPFS), the POS code is generally used to reflect the actual setting where the beneficiary receives the face-to-face service.").

[47]Doc. 54 at 5.

[48]CMS Manual, Ch. 16 § 120 at 63.

[49]Doc. 75 at 6.

-11-

claims, it does not follow that the place of service for those claims is the geographic location of ZMG's physician. The unstated premise of ZMG's argument is that all "physician claims" fall under the MPFS and therefore, based on the example from the CMS Manual discussed above, the POS code and the service location in Box 32 should generally reference the physician's location. But not all physician claims fall under the MPFS. According to the CMS Manual, physicians may bill for clinical laboratory tests that are subject to the laboratory fee schedule.[50] Indeed, ZMG's claims seek payment under the CLFS.

Second, ZMG cites the following sentence from Chapter 16 of the CMS Manual: "If a physician or medical group furnishes laboratory tests in an office setting and it is appropriate for them to be performed in the physician's office, no further development of the source of the laboratory tests is required."[51] ZMG does not explain how this instruction aids its case; the court concludes that it does not. Even if ZMG need only identify itself as the rendering provider of the laboratory tests, this does not mean that it need not specify the geographic location where the tests were rendered.

Third, ZMG cites instructions found in Chapter 26 of the CMS Manual which provide that Box 32 must indicate the location where the services were performed if the

---

[50] CMS Manual, Ch. 16 § 50.2 at 31 ("If the clinical laboratory test is subject to the laboratory fee schedule, [the insurer] must pay only the person or entity that performed or supervised the performance of the test. However, [the insurer] may also pay one physician for tests performed or supervised by another physician with whom he/she shares a practice, i.e., the two physicians are members of a medical group whose physicians submit claims in their own names rather than in the name of the group. Where the medical group submits claims in the name of the group for the services of the physician who performed or supervised the performance of these tests, [the insurer] must pay the group.").

[51] *Id.*

services were performed by an outside laboratory.⁵² This language does not imply, as ZMG argues, that Box 32 need not indicate the location where the services were performed if they were performed by a physician's office laboratory.

Finally, ZMG cites an instruction manual to HCFA 1500 that was promulgated by the National Uniform Claim Committee ("the NUCC Manual") in July 2015.⁵³ ZMG asserts that Premera has incorporated the NUCC Manual into its own provider reference manual.⁵⁴ ZMG notes that the NUCC Manual states as follows with regard to Box 32:

> If the "Service Facility Location" is a component or subpart of the Billing Provider and they have their own [National Provider Identifier ("NPI")] that is reported on the claim, then the subpart is reported as the Billing Provider and "Service Facility Location" is not used. When reporting an NPI in the "Service Facility Location," the entity must be an external organization to the Billing Provider.⁵⁵

ZMG also points out that, with regard to Box 32A, the NUCC Manual states: "Only report a Service Facility Location NPI when the NPI is different from the Billing Provider NPI."⁵⁶

These instructions apply to service facility locations that have their own NPI. They have no bearing on this case because ZMG admits that its Tennessee laboratory

---

⁵²Doc. 75 at 8 (citing CMS Manual, Ch. 26 § 10.4 at 13–14; 20).

⁵³NAT'L UNIF. CLAIM COMM., 1500 HEALTH INSURANCE CLAIM FORM REFERENCE INSTRUCTION MANUAL FOR FORM VERSION 02/12 (Version 3.0, July 2015), http://www.nucc.org/images/stories/PDF/1500_claim_form_instruction_manual_2012_02-v3.pdf.

⁵⁴Doc. 75 at 10.

⁵⁵NUCC Manual at 52.

⁵⁶*Id.*

is "registered as a location of [ZMG's] physician group practice and bills under [ZMG's] group NPI."[57] The NUCC Manual does not state, as ZMG apparently contends, that Box 32 should not be used to indicate the service facility location where the service was performed by a subpart of the billing provider that lacks its own NPI. The relevant portion of the NUCC instructions suggests the opposite.[58]

In sum, the CMS Manual states that the provider must use Box 32 to supply the location where the service was rendered regardless of which POS code applies.[59] Although the manual also states that, for MPFS claims, the location of the physician's face-to-face encounter with the patient will generally be the same location as the location where the service was rendered, it contains no similar statement with regard to CLFS claims like those at issue here. ZMG's HIPAA claim lacks merit.

## V. CONCLUSION

For the reasons set forth above, Plaintiffs' motion at docket 54 is denied.

DATED this 8th day of May 2017.


/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[57]Doc. 54 at 24.

[58]NUCC Manual at 52 ("INSTRUCTIONS [for Box 32]: Enter the name, address, city, state, and ZIP code of the location *where the services were rendered*.") (emphasis added).

[59]CMS Manual, Ch. 26 § 10.4 at 19 ("Effective January 1, 2011, for claims processed on or after January 1, 2011, submission of the location where the service was rendered will be required for all POS codes.").

-14-