# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | |
|---|---|
| John D. Zipperer, Jr., M.D., ) | |
| ) | |
| Plaintiff, ) | 3:15-cv-00208 JWS |
| ) | |
| vs. ) | **ORDER AND OPINION** |
| ) | |
| Premera Blue Cross Blue Shield of ) Alaska, ) | [Re: Motions at Dockets 85, 109, 111, 114, and 117] |
| ) | |
| Defendant. ) | |

## I. MOTIONS PRESENTED

Before the court are five motions. First, at docket 85, defendant Premera Blue Cross Blue Shield of Alaska ("Premera") moves pursuant to Rule 12(c) for a partial judgment on the pleadings regarding Count II of the complaint of plaintiff John D. Zipperer, Jr., M.D. ("Zipperer"). Zipperer's opposition at docket 89 requested the court to convert the motion to a Rule 56 motion for summary judgment. Premera's reply is at docket 99. At docket 105 the court granted Zipperer's request and converted the motion to a motion for summary judgment. The court allowed Zipperer to file a

supplemental response, which he did at docket 108, and allowed Premera to file a supplemental reply. Premera did not file a supplemental reply.

Second, at docket 109 Premera moves for terminating sanctions pursuant to Rule 37(b). Premera supports the motion with a declaration of counsel at docket 110. Zipperer did not file an opposition by the August 11, 2017 deadline to do so. On August 18, Premera filed a reply at docket 115, noting Zipperer's failure to file a timely opposition. At docket 116 Zipperer filed a "declaration in opposition" to Premera's motion. Premera replied at docket 118.

Third, at docket 111 Zipperer moves for sanctions under Rule 30(g). Premera opposes at docket 113. Zipperer did not file a reply.

Fourth, at docket 114 Zipperer moves for leave to amend its complaint pursuant to Rule 15(a)(2). Premera opposes at docket 119, supported by a declaration of counsel at docket 120. Zipperer did not file a reply.

Fifth, at docket 117 Premera moves for sanctions under Rule 37(c) and summary judgment under Rule 56. Zipperer opposes at docket 121. Premera replies at docket 122.

Oral argument was not requested and would not assist the court.

## II. BACKGROUND

The background of this case set out in detail in the court's order at docket 79 need not be repeated here. Suffice it to say, for present purposes, Zipperer is a physician who specializes in "interventional pain management."[1] His medical group,

---

[1] First Amended Complaint. Doc. 23 at 2 ¶ 4.

Zipperer Medical Group ("ZMG"), treats "patients with a face-to-face encounter at one of [its] Alaska clinics," "obtain[s] samples for testing," and sends the samples to its office in Tennessee for processing.[2]  Zipperer alleges that Premera has not paid an unspecified number of health insurance claims "with dates of service ranging from December 2014 to the present."[3]  All of the claims at issue are for services performed in Tennessee.[4]

Zipperer's First Amended Complaint ("FAC") alleges: (1) that Premera has violated Alaska's "[p]rompt payment of health care insurance claims" statute, AS 21.36.495 ("Prompt Payment Statute");[5] and (2) Zipperer is entitled to a declaratory judgment that it is filling out Box 32 of the form "CMS-1500" correctly according to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").[6]  At docket 79 the court denied a summary judgment motion filed by Zipperer and ZMG.  At docket 104 the court granted Zipperer's motion to substitute himself in ZMG's place in this litigation and dismissed ZMG as a party.

### III.  STANDARDS OF REVIEW

**A.    Rule 56**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7]  The

---

[2]*Id.* at 2 ¶¶ 4–5; 3 ¶¶ 12–13.

[3]*Id.* ¶ 7.

[4]*Id.* at 3 ¶ 11.

[5]*Id.* at 7–8.

[6]*Id.* at 8–9.

[7]Fed. R. Civ. P. 56(a).

-3-

materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[8] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[9] However, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[10]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[11] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[12] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[13] All evidence presented by the non-movant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the non-movant.[14] However, the non-moving party may not rest upon mere allegations or

---

[8]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[9]*Id.*

[10]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[11]*Id.* at 323.

[12]*Id.* at 323–25.

[13]*Anderson,* 477 U.S. at 248–49.

[14]*Id.* at 255.

denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[15]

**B.     Rule 15(a)**

Rule 15(a) states that after the time to amend pleadings as a matter of course has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave."[16] Although "the grant or denial of an opportunity to amend is within the discretion of the District Court,"[17] the "court should freely give leave when justice so requires."[18] "Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'"[19]

## IV.  DISCUSSION

**A.     Zipperer's HIPAA Cause of Action Lacks Merit**

One of the purposes of HIPAA is "'to improve the . . . efficiency and effectiveness of the health information system through the establishment of standards and requirements for the electronic transmission of certain health information.'"[20] In furtherance of this goal, the Department of Health and Human Services ("DHHS") has

---

[15]*Id.* at 248–49.

[16]Fed. R. Civ. P. 15(a)(2).

[17]*Foman v. Davis*, 371 U.S. 178, 182 (1962).

[18]Fed. R. Civ. P. 15(a)(2).

[19]*United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (quoting *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960)).

[20]HIPAA, Pub. L. No. 104-191, § 261, 110 Stat. 1936.

-5-

promulgated a rule that, among other things, adopts standards and code sets that covered entities must use.[21] The current standards that apply to the electronic transmission of professional health care claims, entitled "ASC X12N 837-P" ("837-P"), are issued by the American National Standards Institute, Accredited Standards Committee ("ASC").[22] DHSS has also adopted the 837-P's "implementation specifications,"[23] which are the ASC's "specific requirements or instructions for implementing" the 837-P standards.[24] The 837-P standards and implementation specifications are relevant even where a provider submits a claim non-electronically using the CMS-1500 paper form because the CMS-1500's data elements are consistent with the 837-P standards.[25] Thus, guidance on the 837-P's "Loop ID 2310C" is relevant to interpreting Box 32 on the CMS-1500 form because both queries seek the same data.[26] Additionally, DHSS has issued authoritative guidance on the CMS-1500 form in

---

[21]Health Insurance Reform: Standards for Electronic Transactions, 65 Fed. Reg. 50,312, 50,367 (Aug. 17, 2000) (codified at 45 C.F.R. pt. 162).

[22]45 C.F.R. §§ 162.1102(b)(2)(iii)–(c). *See also* Dep't of Health and Human Servs., Ctrs. for Medicare & Medicaid Servs., *Medicare Billing: 837P and Form CMS-1500* at 1–2 (October 2016), https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/837P-CMS-1500.pdf; Dep't of Health and Human Servs., Ctrs. for Medicare & Medicaid Servs., *Medicare Claims Processing Manual*, Pub. No. 100-04, Ch. 1 § 02.1.1 at 13, https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/clm104c01.pdf.

[23]45 C.F.R. § 162.920(a)(11).

[24]45 C.F.R. § 160.103.

[25]Dep't of Health and Human Servs., Ctrs. for Medicare & Medicaid Servs., *Medicare Billing: 837P and Form CMS-1500* at 1 (October 2016), https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/837P-CMS-1500.pdf.

[26]*See* American Med. Ass'n, Nat'l Unif. Claim Comm., *1500 Claim Form Map to the X12N Health Care Claim: Professional (837)* at 8 (Nov. 2011),

the "Medicare Claims Processing Manual" written by the Centers for Medicare and Medicaid Services ("the CMS Manual").[27] The court will refer to these authorities collectively as the "HIPAA standards."

Premera's motion at docket 85 seeks judgment on the pleadings with regard to Zipperer's HIPAA cause of action based on the court's holding at docket 79 that the HIPAA standards require providers to complete Box 32 of the CMS-1500 with the location where the specific billed service was rendered.[28] In his opposition, Zipperer stated that the court cannot decide Premera's motion without considering facts outside the pleadings.[29] Thus, the court converted Premera's motion into one for summary judgment.[30]

Zipperer then supplemented the record with eight documents. They include (1) an unsigned settlement agreement that was allegedly drafted by Premera in 2016; (2) a September 27, 2011 Change Request to the Medicare Carriers Manual issued by DHHS, Centers for Medicare and Medicaid Services ("CMS"); (3) a copy of 42 C.F.R. § 410.32; (4) an excerpt from a final rule issued by DHHS on October 31, 1997; (5) an excerpt from Chapter 15 of CMS' Medicare Benefit Policy Manual; (6) a print-out of 42

---

http://www.nucc.org/images/stories/PDF/1500_form_map_to_837p_5010_v2-0_112011.pdf (stating that the data element sought by both Box 32 of the CMS-1500 and Loop ID 2310C of the 837-P is "Service Facility Location Information.").

[27]Dep't of Health and Human Servs., Ctrs. for Medicare & Medicaid Servs., *Medicare Claims Processing Manual*, Pub. No. 100-04, Ch. 26, https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/clm104c26.pdf.

[28]Doc. 79 at 14.

[29]Doc. 89 at 2.

[30]Fed. R. Civ. P. 12(d).

U.S.C § 1395x(s); (7) excerpts from Chapters 13 and 16 of CMS' Medicare Claims Processing Manual; and (8) a print-out from the website of Nordian Healthcare Solutions.

None of these materials raise a genuine dispute as to material fact. To the contrary, the only facts material to Zipperer's HIPAA claim are as follows: Zipperer billed the claims at issue for laboratory services that were performed in Tennessee.[31] Zipperer does not dispute these facts.[32] Thus, the parties' dispute is purely legal in nature. The specific legal question is whether the HIPAA standards require Zipperer, when he submits claims to Premera for laboratory services performed in Tennessee, to fill out Box 32 of the CMS-1500 form with (a) the location of the physician's face-to-face encounter with the patient when the specimen was drawn, as Zipperer argues, or (b) the location where the specific laboratory service that is being billed was actually performed, as Premera argues.[33]

The court resolved this legal dispute in Premera's favor at docket 79. None of the legal authorities that Zipperer has submitted in opposition to Premera's present motion convinces the court that this holding was in error. Premera's interpretation of Box 32 is supported by the 837-P implementation specifications[34] and other published

---

[31]*See* doc. 71-3 through doc. 71-12 (showing that Zipperer's claims sought payment for the processing of specimens in a clinical diagnostic laboratory).

[32]*See, e.g.,* doc. 23 at 5 ¶ 26 ("[T]he lab tests were processed in Tennessee and were not processed at [ZMG's] Alaska laboratory."); doc. 83 at 13 (admitting that the lab tests were "performed in Tennessee.").

[33]*See* doc. 23 at 8–9 ¶¶ 52–53.

[34]Am. Nat'l Standards Inst., Accredited Standards Comm., *ASC X12 Standards for Electronic Data Interchange Technical Report Type 3—Health Care Claim: Professional (837),*

-8-

guidance on the HIPAA standards.[35]  Summary judgment will be granted in Premera's favor.

## B.   Zipperer Will Not Be Granted Leave to Amend

Zipperer seeks leave of court to amend his complaint to alter his HIPAA cause of action to add new fraud and breach-of-contract allegations, and to add a third cause of action for bad faith.[36]  Courts consider the four "*Foman* factors" when determining whether to grant a party leave to amend its complaint: "(1) bad faith on the part of the movant; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the proposed amendment."[37]  Prejudice to the opposing party is the factor that "carries the

---

*ASC X12N/005010X22* at 269 (May 2006) (reproduced at the conclusion of this opinion) (stating that Loop ID 2310C, the purpose of which "is to identify *specifically where the service was rendered*," is required "when the location of the health care service is different than that carried in Loop ID-2010AA (Billing Provider).") (emphasis added).

[35]*See* Dep't of Health and Human Servs., Ctrs. for Medicare & Medicaid Servs., *Medicare Claims Processing Manual*, Pub. No. 100-04, Ch. 26 § 10.4 at 19, https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/clm104c26.pdf (stating that "submission of the location where the service was rendered [is] required" for Box 32); American Med. Ass'n, Nat'l Unif. Claim Comm., *1500 Health Insurance Claim Form Reference Instruction Manual for Form Version 02/12* at 52 (Version 3.0, July 2015), http://www.nucc.org/images/stories/PDF/1500_claim_form_instruction_manual_2012_02-v3.pdf (stating that Box 32 must contain "the name, address, city, state, and ZIP code of the location where the services were rendered."); *id.* (stating that Box 32 asks the provider to identify "the site where service(s) were provided."); American Nat'l Standards Inst., Accredited Standards Comm., *Final Informal Interpretation in Response to Request for Interpretation #1932* (October 13, 2014), http://rfi.x12.org/Request/Details/1932 ("The service facility location is related to each specific service. . . .   If the specimen draw is the only service being billed, then the service facility location is the location where the specimen was drawn.  *If the processing of the specimen is the only service being billed, then the service facility location is the location where the specimen was processed*.") (emphasis added).

[36]Doc. 114.

[37]*Naranjo v. Bank of Am. Nat'l Ass'n*, No. 14-CV-02748-LHK, 2015 WL 913031, at *3 (N.D. Cal. Feb. 27, 2015) (citing *Foman*, 371 U.S. at 182).

-9-

greatest weight."[38]  "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend."[39]  "The party opposing the amendment bears the burden of showing why the amendment should not be granted."[40]

Zipperer filed his motion to amend one month after the close of discovery.[41]  The additional causes of action that Zipperer wishes to add to his complaint would transform this case from one in which Zipperer seeks no damages into one in which he seeks over $1 billion in damages.  Allowing Zipperer's amendment would severely prejudice Premera, as Zipperer's new claims would require extensive discovery that Premera has no time left to conduct.  Based on this prejudice to Premera, the court cannot grant Zipperer leave to amend his pleadings at this late stage of the litigation.[42]

C.     **Premera's Sanctions Motions Will Be Denied**

Under the Local Rules, counsel for a party moving for Rule 37 sanctions must either (a) "confer in person, or if they are not located in the same city then by telephone, with counsel for the party against whom relief is sought in an effort to resolve any discovery dispute" and attach a Good Faith Certificate to his or her motion or

---

[38]*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[39]*Id.* (emphasis in original).

[40]*ABM Indus., Inc. v. Zurich Am. Ins. Co.*, 237 F.R.D. 225, 227 (N.D. Cal. 2006).

[41]Doc. 53 at 4.

[42]*See Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) ("The additional causes of action would have required further discovery, which was to close five days after the motion to amend was filed.  The requirement of additional discovery would have prejudiced Edison and delayed the proceedings. The district court, therefore, did not abuse its discretion when denying Zivkovic's motion to amend.").

(b) "include in the first paragraph [of the motion] a statement as to the reason that a Good Faith Certificate can not be attached, including the efforts made to arrange a conference."[43] Premera's counsel did not comply with this rule.

Premera states that its counsel could not complete a Good Faith Certificate "because of Dr. Zipperer's unwillingness or inability to address his discovery obligations in a forthright, comprehensive, and reasonable or rational manner."[44] But Premera fails to show that it made any efforts to arrange the necessary conference before filing two motions seeking terminating sanctions. Premera touts the emails that its counsel exchanged with Zipperer, but this is not enough.[45] As this court has stated:

> E-mail exchanges are generally of little help in resolving serious discovery disputes. The impersonal nature of and detached atmosphere surrounding the act of typing an e-mail and hitting the send button in the confines of one's own office is more likely to solidify intransigence than advance the possibility of reasonable accommodation. Second, when there is a meeting it is necessary to start slowly and civilly seeking whatever area of agreement may be available, rather than to straightaway announce unalterable positions or cast aspersions.[46]

Premera's motions at dockets 109 and 117 will be denied without prejudice to Premera's ability to re-file them in the next 45 days, after first complying with Local Rule 37.1.

---

[43]D.Ak. L.R. 37.1.

[44]Doc. 117 at 2.

[45]*E-TERRA, LLC v. SARS Corp.*, No. 3:08-cv-00123 JWS, 2010 WL 625579, at *1 (D. Ak. Feb. 18, 2010) ("The motion papers disclose that the parties had a significant exchange of e-mails respecting discovery issues. Standing alone, such an exchange is insufficient, for the local rule requires the lawyers to meet in person, or when not resident in the same community, to speak over the telephone.").

[46]*Id.*

To be clear, this ruling does not countenance Zipperer's violation of the court's order at docket 80 or his repeated violations of the Federal Rules of Civil Procedure. Zipperer violated the court's order at docket 80 by not serving timely answers to Premera's interrogatories 2, 13, 14, and 15 using the procedure set out at Rule 33(b)(3), and by not serving timely responses to Premera's requests for production 1, 13, and 14 using the procedure set out at Rule 34(b)(2). Similarly, Zipperer violated Rules 33 and 34 by not timely responding to Premera's interrogatory 16 and request for production 18 by informing Premera that his complaint seeks no damages.[47] Zipperer may suffer from the misapprehension that the Federal Rules of Civil Procedure do not apply to him, or the court must relax them, because he has chosen to represent himself.[48] This is not the case. Although courts must hold "the allegations of [a] pro se complaint . . . to less stringent standards than formal pleadings drafted by lawyers,"[49] pro se litigants are required to comply with the rules of procedure.[50] Zipperer does not get a free pass to violate court orders, the Federal Rules of Civil Procedure, and the Local Rules for the District of Alaska because he chose to fire his lawyer.[51] Now that

---

[47] *See* doc. 121.

[48] *See* doc. 111 at 2 ¶ 19 (describing D.Ak. L.R. 59.1(e) as "something a pro se litigant would not be expected to know"); *id.* at 4 ("[W]ith regards to the Court's strict application of the Rules of procedure . . . I would remind the Court of the liberality afforded the pro se litigant, especially in civil matters where Court appointed counsel is not an option.").

[49] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[50] *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

[51] *See Jacobsen v. Filler*, 790 F.2d 1362, 1364–65 (9th Cir. 1986) ("[P]ro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record. Trial courts generally do not intervene to save litigants from their choice of counsel, even when the lawyer loses the case because he fails to file opposing papers. A litigant who

-12-

Zipperer has been put on clear notice of his responsibilities, any future violations will likely be found willful and his complaint will be subject to dismissal.[52]

**D.    Zipperer's Rule 30(g) Motion Will Be Granted**

Zipperer's motion at docket 111 seeks sanctions under Rule 30(g), which states that "[a] party who, expecting a deposition to be taken, attends in person . . . may recover reasonable expenses for attending . . . if the noticing party failed to . . . attend and proceed with the deposition."  "Whether to impose discovery sanctions is a matter of the district court's discretion."[53]

In May, Premera noticed Zipperer's deposition for July 11, 2017.[54]  Less than a week before the deposition (on July 5), Premera's counsel John R. Neeleman ("Neeleman") emailed Zipperer to tell him that Premera could not take his deposition until he complied with the court's order compelling discovery at docket 80.[55]  In response, Zipperer stated that his answers to interrogatories 13 and 15 are contained in the declaration he filed at docket 98.[56]  Neeleman responded that this was not enough, Premera needed "a full production of the documents that the Court has ordered [him] to produce and responses to all of the interrogatories the court has ordered [him] to

---

chooses *himself* as legal representative should be treated no differently.") (emphasis in original).

[52]D.Ak. L.R. 37.1(c).

[53]*Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 532 (9th Cir. 1983).

[54]Doc. 110-2 at 31–33.

[55]*Id.* at 2.

[56]Doc. 110-3 at 2.

-13-

answer, before [Premera] can take [his] deposition."[57] In response, Zipperer stated that his remaining discovery "answers [would] be forthcoming."[58]

If the parties' discussion regarding Zipperer's deposition ended there, then Zipperer would have had no reasonable expectation that his deposition would be taken as originally scheduled. But subsequent events muddied the waters. On July 6 Zipperer asked if the deposition could be rescheduled by one day.[59] Neeleman's response was: "Dr. Zipperer, your proposed alternate dates are unreasonable and we can't make them. This deposition has been noted since May."[60] Neeleman did not indicate that the deposition would not actually proceed because Zipperer had not complied with the court's order.

Even if Neeleman did not intend to imply that the deposition would occur as scheduled on July 11, Zipperer indicated to Neeleman that this was his understanding. Zipperer emailed Neeleman on July 6 stating that he was planning to bring his own videographer to the deposition.[61] And on July 7 Zipperer asked Neeleman if they would be meeting at the office of Neeleman's former law firm.[62] From these two emails, Neeleman should have known that Zipperer was expecting the deposition to occur on July 11 as originally scheduled. If Neeleman had no intention of conducting the

---

[57] *Id.*

[58] Doc. 110-4 at 2.

[59] *Id.*

[60] *Id.*

[61] Doc. 112-1 at 7.

[62] Doc. 110-10 at 2–3.

-14-

deposition on that date, he had a duty to address Zipperer's misunderstanding. Neeleman's failure to do so gave Zipperer a reasonable expectation that his deposition would be taken on July 11. Zipperer will be awarded his reasonable expenses for attending the deposition. These expenses do not include "lost opportunity damages," such as lost income due to cancelled medical appointments.[63] Zipperer's recoverable expenses are limited to the expenses he reasonably incurred by attending the cancelled deposition, such as transportation and parking costs.[64]

## V. CONCLUSION

For the reasons set forth above, the motions at dockets 85 and 111 are granted; the motions at dockets 109 and 117 are denied without prejudice to Premera's ability to refile them in the next 45 days upon a showing of compliance with Local Rule 37.1; and the motion at docket 114 is denied with prejudice. Premera is ordered to pay Zipperer's reasonable expenses for attending his deposition on July 11, 2017. If the parties cannot stipulate to the amount of expenses that Premera must pay Zipperer, then within 14 days from the date of this order Zipperer shall file a properly supported motion showing his reasonable expenses, and Premera shall respond within 7 days after the motion is filed. No reply may be filed unless requested by the court.

DATED this 19th day of October 2017.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[63] *See Ewing v. Flora*, No. 14-cv-2925 AJB, 2015 WL 12564224, at *2 (S.D. Cal. Dec. 28, 2015).

[64] *Id.*

-15-

# NM1 - SERVICE FACILITY LOCATION NAME

**X12 Segment Name:** Individual or Organizational Name

**X12 Purpose:** To supply the full name of an individual or organizational entity

**X12 Set Notes:** 1. Loop 2310 contains information about the rendering, referring, or attending provider.

**X12 Syntax:**
1. P0809
   If either NM108 or NM109 is present, then the other is required.
2. C1110
   If NM111 is present, then NM110 is required.
3. C1203
   If NM112 is present, then NM103 is required.

**Loop:** 2310C — SERVICE FACILITY LOCATION NAME   **Loop Repeat:** 1

**Segment Repeat:** 1

**Usage:** SITUATIONAL

**Situational Rule:** Required when the location of health care service is different than that carried in Loop ID-2010AA (Billing Provider).
If not required by this implementation guide, do not send.

**TR3 Notes:**
1. When an organization health care provider's NPI is provided to identify the Service Location, the organization health care provider must be external to the entity identified as the Billing Provider (for example, reference lab). It is not permissible to report an organization health care provider NPI as the Service Location if the entity being identified is a component (for example, subpart) of the Billing Provider. In that case, the subpart must be the Billing Provider.

2. The purpose of this loop is to identify specifically where the service was rendered. When reporting ambulance services, do not use this loop. Use Loop ID-2310E - Ambulance Pick-up Location and Loop ID-2310F - Ambulance Drop-off Location.

3. Information in Loop ID-2310 applies to the entire claim unless overridden on a service line by the presence of Loop ID-2420 with the same value in NM101.

**TR3 Example:** NM1*77*2*ABC CLINIC*****XX*1234567891~