# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| John D. Zipperer, Jr., M.D., | |
| Plaintiff, | 3:15-cv-00208 JWS |
| vs. | ORDER AND OPINION |
| Premera Blue Cross Blue Shield of Alaska, | [Re: Motions at Dockets 126, 128] |
| Defendant. | |

## I. MOTIONS PRESENTED

At docket 128, defendant Premera Blue Cross Blue Shield of Alaska ("Premera") moves for summary judgment on the only remaining claim in this case, Count I of the First Amended Complaint brought by plaintiff John D. Zipperer, Jr., M.D. ("Zipperer"). Zipperer's opposition is at docket 132. Premera's reply is at docket 135. Oral argument was not requested and would not be of assistance to the court.

At docket 126, Premera moves to dismiss the action based on Zipperer's failure to comply with his discovery obligations. Zipperer responds at docket 133. Premera replies at docket 134. Oral argument would not be of assistance to the court.

## II. BACKGROUND

Zipperer's medical practice, Zipperer Medical Group ("ZMG"), is an "interventional pain management and addiction recovery" physician practice that treats "patients with a face-to-face encounter at one of [its] Alaska clinics," "obtain[s] samples

for testing," and sends the samples to its office in Tennessee for processing.[1] Zipperer's complaint alleges that Premera has not paid ZMG for an unspecified number of health insurance claims "with dates of service ranging from December 2014 to the present."[2] All of the claims at issue are for services performed in Tennessee.[3]

For reasons unrelated to this case Premera placed ZMG's claims on prepayment review status in 2014.[4] According to Premera, prepayment review "means that before Premera issues a payment, it will manually review the underlying medical records for the service billed rather than processing the claim automatically."[5] Sometime after January 28, 2015—the date on which Premera took ZMG off of prepayment review status—ZMG resubmitted an unspecified number of claims to Premera.[6] To do so ZMG used a form known as the "HCFA 1500." Box 32 of the form asks for the "service facility location information."[7] For the claims at issue here ZMG filled in Box 32 with the address of the Alaska clinic where the sample was obtained, not the Tennessee laboratory where the billed service was performed.

In a letter dated March 19, 2015, Premera put ZMG back on prepayment review "due to ZMG's improper completion of box 32 on the HCFA 1500 claim form."[8] The

---

[1] Doc. 23 at 2 ¶¶ 4–5; 3 ¶¶ 12–13.

[2] *Id.* ¶ 7.

[3] *Id.* at 3 ¶ 11.

[4] Doc. 75 at 2.

[5] Doc. 70 at 2 ¶ 7. *See also Bader v. Wernert*, 178 F. Supp. 3d 703, 713 (N.D. Ind. 2016) ("A provider on prepayment review is not paid for a submitted claim until a prepayment review analyst has reviewed the claim to verify its accuracy. In contrast, a provider not on prepayment review has a claim paid without it being reviewed by a prepayment review analyst.").

[6] Doc. 23 at 6 ¶ 31; doc. 45 at 5 ¶ 32.

[7] *See* doc. 23-4 at 25.

[8] Doc. 23-2 at 2.

letter notes that "Box 32 on HCFA 1500 claim form must accurately reflect the location where the laboratory service was performed."[9] ZMG responded to Premera by insisting that it is filling out Box 32 correctly.[10]

According to Zipperer, Premera sent ZMG "voluminous information requests related to the claims at issue" in May.[11] He does not provide the court with the quantity of these requests; he only provides the court with one example of an information request from Premera.[12] In the example, Premera asks ZMG to submit "documentation in support of the laboratory codes billed; laboratory/pathology results/reports" for one claim.[13]

Zipperer's First Amended Complaint ("FAC") alleges in Count I that Premera has violated Alaska's "[p]rompt payment of health care insurance claims" statute, AS 21.36.495 ("Prompt Payment Statute").[14] It asks that the court declare the laboratory claims "clean" and declare Premera to be in violation of the Prompt Payment Statute; it asks that the court declare Zipperer entitled to interest on unprocessed claims and order Premera to process them all. The FAC alleges in Count II that Zipperer is entitled to a declaratory judgment as to the fact that ZMG filled out Box 32 of the "CMS-1500" form correctly according to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").[15]

---

[9] *Id.*

[10] Doc. 23-3.

[11] Doc. 54 at 8.

[12] Doc. 23-4 at 34.

[13] *Id.*

[14] *Id.* at 7–8.

[15] *Id.* at 8–9.

At docket 43, the court partially granted Premera's motion to dismiss Count I, dismissing the Prompt Payment Statute action as to any insurance claims for laboratory services performed for patients enrolled in Premera's health insurance plan for federal employees and patients enrolled in health benefit plans governed by ERISA. At docket 79, the court denied Zipperer's summary judgment motion. At docket 104, the court granted Zipperer's motion to substitute himself in ZMG's place in this litigation and dismissed ZMG as a party. At docket 123, the court granted Premera's motion for summary judgment as to Count II, concluding that Zipperer had filled out Box 32 incorrectly because the location code to be placed in that box should have been the location where the specific laboratory service that was being billed was actually rendered. The court dismissed Count II in its entirety. The last issue in this lawsuit is Count I and only with respect to the remaining insured, state-regulated insurance claims. Premera now moves for summary judgment or, alternatively, for dismissal based on Zipperer's failure to meet his discovery obligations.

### III. STANDARDS OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[17] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[18] However, summary judgment is appropriate "against a party who fails to make a showing sufficient to

---

[16] Fed. R. Civ. P. 56(a).

[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[18] *Id.*

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[19]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[20] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[21] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[22] All evidence presented by the non-movant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the non-movant.[23] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[24]

## IV. DISCUSSION

Alaska's Prompt Payment Statute requires an insurer to act quickly on any insurance claim. Section 495(a) states that a health care insurer must either pay or deny a "clean claim" within 30 days of receiving it.[25] A "clean claim" is a claim that

---

[19] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[20] *Id.* at 323.

[21] *Id.* at 323–25.

[22] *Anderson,* 477 U.S. at 248–49.

[23] *Id.* at 255.

[24] *Id.* at 248–49.

[25] AS 21.36.495(a).

"does not have a defect or impropriety."[26] A defect or impropriety includes "a particular circumstance requiring special treatment that prevents timely payment of the claim."[27] Section 495(b) has a notice requirement that applies if the insurer does not pay or denies a claim. If the insurer denies a claim, it must issue a notice that states the basis for the denial within 30 days of receipt of the claim; if the insurer otherwise does not pay a claim, it must provide a notice within 30 days of receipt of the claim that states the specific information that the insurer needs to adjudicate the claim.[28] The consequence of an insurer's failure to provide the notice required by § 495(b) is that "the claim is presumed a clean claim, and interest shall accrue at a rate of 15 percent annually beginning on the day following the day that the notice was due and continues to accrue until the date that the claim is paid."[29]

Zipperer alleges in his complaint that Premera has violated § 495(a) in that it has failed to pay or deny his "clean" laboratory claims within the requisite 30 days. Zipperer argues in his opposition to the motion for summary judgment that the removal of his claims from the first prepayment review status in January 2015 is enough proof to show that Premera considered his claims clean and therefore enough to demonstrate his entitlement to payment. As noted by Premera, such an argument mischaracterizes the evidence. Premera did initiate and terminate a separate prepayment review period against Zipperer, but the reasons for that prepayment review period are unrelated to the current litigation. It came to Premera's attention that his laboratory claims had an error in reporting the service location, and therefore he was placed back on prepayment

---

[26] AS 21.36.495(i)(1).

[27] Id.

[28] AS 21.36.495(b).

[29] AS 21.36.495(c).

-6-

review status for this separate issue.[30]  Moreover, Premera did not violate § 495(a) because, as the court concluded at docket 123, the laboratory claims at issue were not properly coded.  When Zipperer completed HCFA 1500 he incorrectly indicated in Box 32 that the laboratory services had been performed at his Alaska clinic where the test sample was taken rather than his Tennessee laboratory where the testing service was performed.  This error (whether intentional or not) renders these Tennessee laboratory claims defective and therefore not "clean" as that term is defined in the statute.

        Zipperer alleges that, regardless of whether the laboratory claims were clean, Premera failed to provide the requisite notices under § 495(b).  To establish a violation of § 495(b) a health care provider must show that (1) it submitted a claim to an insurer; (2) the insurer either did not pay or denied the claim; and (3) the insurer did not provide the notice required by § 495(b) within 30 days of receipt of the claim.  The notice must state the reasons for the denial if the insurer has decided to deny the claim or state what is needed to pay the claim in the event the insurer has decided it cannot yet issue payment.  In his motion for summary judgment at docket 54, Zipperer specified that Premera committed two categories of § 495(b) violations.  The first category involves claims for which Premera allegedly failed to provide any sort of timely notice.  This category includes the unspecified quantity of claims that ZMG submitted to Premera sometime between the end January 2015 and thirty days before Premera's May 2015 information requests.  In his motion, Zipperer asserted that there is a lack of a genuine dispute regarding the fact that ZMG submitted these claims to Premera; that Premera either failed to pay or denied all of them; and that Premera did not provide ZMG with timely notices required by § 495(b) with regard to any of them.  As a result, Zipperer argued, claims in this "no notice" category are presumed to be clean and are payable.

        The second category of § 495(b) violations involves the unspecified quantity of claims that ZMG submitted to Premera less than 30 days before Premera's May 2015

---

[30]Doc. 70 at pp. 2-3 (Seifert Decl. at ¶¶ 5-9).

-7-

information requests. Zipperer argued in his motion for summary judgment that these claims should be presumed clean because Premera's notices were defective under § 495(b).

At docket 79, after noting that Zipperer bears the burden of proof at trial on its § 495 claim, the court denied Zipperer's request for summary judgment. It concluded that Zipperer "cite[d] no evidence which establishes that [ZMG] submitted any claims to Premera that Premera either did not pay or denied, how many such claims [ZMG] submitted, or the dates on which Premera received them" and that he "cite[d] no evidence showing that Premera failed to provide ZMG with notices required by § 495(b) within 30 days of when it received these specific claims."[31] That is, Zipperer only *alleged* that he resubmitted an unspecified amount of claims at some unspecified date after January 28, 2015 but did not produce evidence at the summary judgment phase which, if uncontroverted, would entitle Zipperer to a directed verdict at trial. Moreover, the court noted that the evidence regarding Premera's information requests in May of 2015 only consisted of one notice dated May 6, 2015 regarding a specific claim, and it concluded that the "notice is unavailing because it is impossible for the court to discern when Premera received the claim subject to the notice."[32]

Now Premera moves for summary judgment. A party moving for summary judgment without the ultimate burden of persuasion at trial, such as Premera, must either produce evidence negating an essential element of the nonmoving party's claim or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.[33] Here, Premera provided a declaration explaining that it is standard practice for Premera to send out explanation of

---

[31]Doc. 79 at pp. 8-9.

[32]Doc. 79 at p. 9.

[33]*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

-8-

payment forms ("EOPs") for all claims within 30 days to ensure that it is fully compliant with Alaska's Prompt Pay Statute.[34] It states that Premera followed this practice with regard to Zipperer's laboratory claims.[35] The declaration explains how the EOPs are coded to show how each test or service billed was processed for payment or denied.[36] It explains, with attached examples, that EOPs for Zipperer's laboratory claims listed code "B37" as a reason for denial.[37] "B37" means that Premera, after reviewing the available records, has determined that the procedure listed for payment was not performed in the place where the service was performed.[38]

Zipperer has not produced any evidence that contradicts Premera's evidence. That is, he does not identify any claims for which he did not receive an EOP; he does not provide any evidence to show when specifically each laboratory claim was resubmitted and when he received a corresponding EOP; he has not identified a claim for which he received an EOP that lacked a code that identifies the reason for denial. His opposition to Premera's summary judgment is under three pages long and contains no supporting evidence or citations to the record. Zipperer continues to rely only on his general allegation that he resubmitted laboratory claims sometime after January of 2015 and never received proper notice of denial but instead was simply placed on indefinite prepayment review.[39] The March 19, 2015 letter informing Zipperer that he had been placed on prepayment review as to the Box 32 issue does not contradict Premera's evidence about sending timely EOPs. The letter merely shows that Premera

---

[34]Doc. 70 at p. 4 (Seifert at ¶ 21).

[35]Doc. 70 at p. 4 (Seifert at ¶ 20).

[36]Doc. 70 at p. 5 (Seifert Decl. at ¶¶ 24-25).

[37]Doc. 70 at p. 5 (Seifert Decl. at ¶¶ 22-23. 26); Doc. 70-3; Doc. 70-4.

[38]Doc. 70 at p. 5 (Seifert Decl. at ¶ 27).

[39]Doc. 132.

was not going to automatically process the claim for payment but instead had to review the submitted claims to cross-reference Box 32, the location of service box, with Box 23, the box providing the laboratory's certification number.

Without any evidence to prove that Premera violated the 30-day notice requirement, Zipperer cannot prove an essential element of his claim. Furthermore, in light of the evidence produced by Premera to show that EOPs are issued routinely within 30 days and that Zipperer would have received EOPs indicating denial of his claims for reasons related to Box 32, as well as evidence in the record showing the ongoing correspondence between the parties as to the Box 32 issue throughout the Spring of 2015, Premera has persuaded the court that there is no genuine issue of material fact for trial.

Premera also asserts that summary judgment in its favor is warranted because Zipperer's complaint improperly attempts to split the issue of liability and damages, asking that the court issue an injunction against Premera now, without presenting any proof of damages. Premera argues that, to avoid improper claim splitting, Zipperer needed to bring all of his claims for relief in one proceeding. Zipperer failed to raise the issue of damages or offer any proof of damages, and therefore Premera contends the whole case should be dismissed. Zipperer did not address this argument in his response briefing. While the court finds Premera's argument persuasive, it need not decide the issue given that it has concluded summary judgment is warranted on other grounds.

Finally, Zipperer argues that, regardless of the merits of the motion, the court should deny it based on untimeliness. He asserts that the time for discovery ended last summer, and the court's scheduling and planning order at docket 53 required dispositive motions to be filed no later than August 30, 2017. However, Zipperer fails to address the various discovery disputes that have been ongoing after that deadline. Premera filed motions related to Zipperer's failure to comply with the court's discovery order at docket 80. Indeed, as recently as October 23, 2017, the court gave Premera

an additional 45 days to attempt to complete a good faith negotiation with Zipperer as to the ongoing discovery issues and to refile its motions requesting terminating sanctions.[40] Premera subsequently refiled its request for terminating sanctions within the 45-day deadline, along with this motion for summary judgment. In doing so, Premera submitted evidence to demonstrate its ongoing efforts to obtain discovery from Zipperer.[41] The parties had been in communication throughout October and November of 2017, with Zipperer asserting he would provide his answers to interrogatories under oath, then later asserting he just recently received discovery materials from his former attorney, and then later asserting that Premera had all necessary discovery materials. Given that discovery is not yet resolved and Premera refiled its motion for terminating sanctions within the 45-day deadline and has been otherwise diligent in attempting to meet the court's deadlines, the court concludes that there is good cause to consider the summary judgment motion at this time.[42] Furthermore, the fact that no trial date has been set and Zipperer continues to rely solely on the allegations in his complaint, further supports the court's decision to entertain and decide the motion.

---

[40]Doc. 123.

[41]Doc. 127.

[42]*See* Fed. R. Civ. P. 16(b)(4) (requiring good cause and the judge's consent to modify the court's schedule); *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir.1992) ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."); *cf. Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005) (holding that there was no abuse of discretion for the district court to consider a late-filed motion for summary judgment where the opposing party had failed to complete responses to discovery until after the dispositive motion deadline, there were pending dispositive motions at the time the late-filed summary judgment motion was filed, and there was no prejudice to the opposing party).

## V. CONCLUSION

For the reasons set forth above, the motion at docket 128 is GRANTED. The motion for terminating sanctions at docket 126 is DENIED AS MOOT. The Clerk will please enter judgment that plaintiff take nothing and that defendant recover its attorney fees and costs.

DATED this 23rd day of February, 2018.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE